[No. G038478. Fourth Dist., Div. Three. June 23, 2008.]

MARGARET OLSEN, Plaintiff and Appellant, v.
LYNN R. REID, Defendant and Appellant.

**COUNSEL**

Russell & Lazarus and Stephen D. Counts for Plaintiff and Appellant.

Hinton, Alfert & Sumner, Scott H. Z. Sumner and Jeremy Lateiner for Consumer Attorneys of California as Amicus Curiae on behalf of Plaintiff and Appellant.

Pollack, Vida & Fisher, Michael M. Pollak, Daniel P. Barer; Law Offices of Roger A. Koll and Russell P. McQuown for Defendant and Appellant.

**OPINION**

**MOORE, Acting P. J.**—Plaintiff Margaret Olsen appeals a posttrial order reducing the amount of the jury's verdict in this personal injury case. She argues the trial court improperly reduced the amount of the medical expenses

awarded by the jury. We agree and therefore reverse the judgment, and direct the court to reinstate the full amount of the jury's verdict.

Defendant Lynn R. Reid cross-appeals, arguing the trial court improperly allowed the jury to hear evidence as to the full amount of plaintiff's medical expenses. We disagree and affirm the court's order.

I

FACTS

In August 2003, plaintiff Margaret Olsen was injured when defendant Lynn Reid struck her from behind with a motorized wheelchair. Olsen suffered considerable injuries as a result and, in 2005, she filed a lawsuit against Reid for negligence. Reid stipulated to liability prior to trial.

Before trial, Olsen moved to admit evidence to the jury of the full amount her medical providers billed her for treatment. The court granted this motion. Reid, on the other hand, moved to admit evidence of the amount Olsen actually paid for her treatment. The motion, in its factual background, stated: "Various insurance carriers have paid various amounts to plaintiff's various medical providers and those providers have written off the remaining balance. The exact amount . . . of medical expenses paid will be verified when the subpoenaed documents arrive in court." The court denied this motion, stating that any reduction in the amount of medical expenses would be handled after the trial.

The record includes evidence that Olsen was actually billed $62,475.81 for medical care. The jury awarded that amount for "past economic loss, including medical expenses," in a total verdict of $250,000.

After the trial, Reid filed a motion to reduce the jury's verdict, relying on the authority of *Hanif v. Housing Authority* (1988) 200 Cal.App.3d 635 [246 Cal.Rptr. 192] (*Hanif*) and *Nishihama v. City and County of San Francisco* (2001) 93 Cal.App.4th 298 [112 Cal.Rptr.2d 861] (*Nishihama*). Reid claimed she was entitled to a reduction in the verdict of $57,394.24 because Olsen's providers had "written off" that portion of her bills. In support of the motion, Reid submitted a 22-page bill from Anaheim Memorial Medical Center (AMMC). Page 20 of that bill includes the following line item: "ADJ— MHIPA CAP ADJ" and in the amount column, "46,270.05-." The next line item reads: "ADJ—MHIPA CAP W/O" and "8,024.15-." The "Total pay-ments & adjustments" is listed as "55,094.20-." The page also includes handwritten notes from an unclear source.

During oral argument on the motion, the court stated that it believed "[t]he write-offs, to this court's way of thinking, are clear." As far as the record reflects, no further evidence was submitted regarding what amounts were actually paid or by whom. The court, however, granted Reid's motion as a partial judgment notwithstanding the verdict and reduced the judgment by $57,394.24.

Both parties now appeal. Olsen argues the court improperly reduced the judgment by $57,394.24. Reid argues the court should have granted its motion in limine, precluding the jury from hearing evidence as to the actual amounts billed by Olsen's providers.

## II

## DISCUSSION

*Olsen's Appeal*

Olsen and amicus curiae ask this court to reconsider the holdings in cases such as *Hanif, supra*, 200 Cal.App.3d 635 and *Nishihama, supra*, 93 Cal.App.4th 298. Those cases held that when a plaintiff has medical insurance, damages are limited to the amount actually paid or incurred, not to any greater amount a medical provider billed, even if that amount was reasonable. (*Hanif, supra*, 200 Cal.App.3d at p. 640; *Nishihama, supra*, 93 Cal.App.4th at p. 306.) We need not go that far, however, in order to decide this case.

Despite Reid's arguments to the contrary, we find it far from clear as to what was paid, what, if anything, was "written off," and to what extent Olsen remained liable for any further charges. The cryptic notations the court relied upon may reflect payments, or write-downs or write-offs; we cannot know, and if any evidence revealed the actual facts, they are not present in the record.[1] Reid claimed she was prepared to demonstrate the amounts Olsen and her insurer actually paid at the time of her motion in limine, yet with this evidence, we cannot find she did so, even under the most permissive standard of review.[2]

We therefore find the trial court erred in reducing the amount of the jury verdict. We reverse this order and direct the trial court to enter a new judgment reflecting the full amount of the jury's verdict.

---

[1] We entirely discount the handwritten notes on the bill. Their provenance is unknown. The notes, therefore, are without foundation and simply have no evidentiary value.

[2] The question of what form a motion to reduce the judgment under the purported *Hanif/Nishihama* rule should take is unclear, but need not be decided here. Whether we review the court's decision for substantial evidence or abuse of discretion, the evidence here is insufficient to support the court's ruling.

*Reid's Cross-appeal*

■ Reid cross-appeals, arguing it was error for the trial court to permit the jury to hear evidence of the full measure of Olsen's medical damages. We squarely reject this argument. Even the cases holding that a plaintiff is entitled to the lesser amount of damages—those incurred rather than billed (and we do not decide that Reid was entitled to such a hearing)—have approved of the jury's hearing evidence as to the full amount of plaintiff's damages. "There is no reason to assume that the usual rates provided a less accurate indicator of the extent of plaintiff's injuries than did the specially negotiated rates obtained by Blue Cross. Indeed, the opposite is more likely to be true." (*Nishihama, supra,* 93 Cal.App.4th at p. 309; see also *Greer v. Buzgheia* (2006) 141 Cal.App.4th 1150, 1157 [46 Cal.Rptr.3d 780].) We therefore find no abuse of discretion in the trial court's denial of the motion.

III

DISPOSITION

The judgment is reversed and the trial court is directed to enter a new judgment reflecting the full amount of the jury verdict. Olsen is entitled to her costs on appeal.

Aronson, J., and Fybel, J., concurred.

**MOORE, Acting P. J.,** Concurring.—I write separately to sound the bell of alarm: By virtue of the *Hanif/Nishihama* procedure (see *Hanif v. Housing Authority* (1988) 200 Cal.App.3d 635 [246 Cal.Rptr. 192] (*Hanif*) and *Nishihama v. City and County of San Francisco* (2001) 93 Cal.App.4th 298 [112 Cal.Rptr.2d 861] (*Nishihama*)) permitting the posttrial reduction of medical expenses, the collateral source rule has been buried without the dignity of any services or parting words. Without statutory authority or the Supreme Court's blessing, the *Hanif/Nishihama* line of cases divorced the collateral source rule from the complicated area of medical insurance. Absent such approval, *Hanif/Nishihama* simply goes too far. I therefore decline to jump on the bandwagon by endorsing this procedure.

*The Collateral Source Rule*

The collateral source rule has long been a part of California law. "The rule derives its earliest articulation in cases of equity and admiralty, where a wrongdoer was held to be responsible for injury irrespective of whether

anyone else provided protection or indemnity to the victim. 'The respondent is not presumed to know, or bound to inquire, as to the relative equities of parties claiming the damages. He is bound to make satisfaction for the injury he has done.' [Citation.]" (*Smock v. State of California* (2006) 138 Cal.App.4th 883, 886 [41 Cal.Rptr.3d 857] (*Smock*).)

Thus, for example, the amount given to a plaintiff as disability payments may not be deducted from the judgment against the defendant. "While it is true that he [plaintiff] received $2 per day compensation while he was unable to work, that sum may not be deducted from his loss of earnings, because it was received from an insurance company under a policy owned and held by him. ' "Damages recoverable for a wrong are not diminished by the fact that the party injured has been wholly or partly indemnified for his loss by insurance effected by him, and to the procurement of which the wrongdoer did not contribute . . . ." ' [Citations.]" (*Peri v. L. A. Junction Ry.* (1943) 22 Cal.2d 111, 131 [137 P.2d 441] (*Peri*).)

The doctrine has been reaffirmed numerous times over the years. (*De Cruz v. Reid* (1968) 69 Cal.2d 217, 223–227 [70 Cal.Rptr. 550, 444 P.2d 342].) The principle has been applied to payments received through insurance (*Peri, supra*, 22 Cal.2d at p. 131), wages received from a plaintiff's employer (*Tremeroli v. Austin Trailer Equip. Co.* (1951) 102 Cal.App.2d 464, 482 [227 P.2d 923]), payments under workers' compensation statutes (*Baroni v. Rosenberg* (1930) 209 Cal. 4, 6 [284 P. 1111]), and myriad other factual situations.[1]

More recent cases have stated the rule as follows: "[I]f an injured party receives some compensation for his injuries from a source wholly independent of the tortfeasor, such payment should not be deducted from the damages which the plaintiff would otherwise collect from the tortfeasor. [Citation.]" (*Helfend v. Southern Cal. Rapid Transit Dist.* (1970) 2 Cal.3d 1, 6 [84 Cal.Rptr. 173, 465 P.2d 61], fn. omitted (*Helfend*).) In *Helfend*, the defendant sought to introduce evidence that 80 percent of the plaintiff's medical expenses (totaling $1302.99) had been paid by his insurance policy. (*Id.* at p. 5.)

The court held that permitting the plaintiff's recovery to be reduced by the amount his insurance company had paid would be improper under the collateral source rule. The court noted the sound policy behind the rule: "The

---

[1] The rule has been abrogated by statute in certain limited situations. For example, the Medical Injury Compensation Reform Act (MICRA) abrogates the rule in actions for professional negligence against health care providers. (Civ. Code, § 3333.1, subd. (a).)

collateral source rule as applied here embodies the venerable concept that a person who has invested years of insurance premiums to assure his medical care should receive the benefits of his thrift. The tortfeasor should not garner the benefits of his victim's providence. [¶] The collateral source rule expresses a policy judgment in favor of encouraging citizens to purchase and maintain insurance for personal injuries and for other eventualities. Courts consider insurance a form of investment, the benefits of which become payable without respect to any other possible source of funds. If we were to permit a tortfeasor to mitigate damages with payments from plaintiff's insurance, plaintiff would be in a position inferior to that of having bought no insurance, because his payment of premiums would have earned no benefit. Defendant should not be able to avoid payment of full compensation for the injury inflicted merely because the victim has had the foresight to provide himself with insurance." (*Helfend, supra*, 2 Cal.3d at pp. 9–10, fn. omitted.)

Noting concerns about potential windfalls to plaintiffs and the possibility of "double recovery," the court pointed out that, in some situations, plaintiffs were required to reimburse their insurers through subrogation contracts. (*Helfend, supra*, 2 Cal.3d at pp. 10–11.) Moreover, "Even in cases in which the contract or the law precludes subrogation or refund of benefits, or in situations in which the collateral source waives such subrogation or refund, the rule performs entirely necessary functions in the computation of damages. For example, the cost of medical care often provides both attorneys and juries in tort cases with an important measure for assessing the plaintiff's general damages. [Citation.] To permit the defendant to tell the jury that the plaintiff has been recompensed by a collateral source for his medical costs might irretrievably upset the complex, delicate, and somewhat indefinable calculations which result in the normal jury verdict. [Citations.]" (*Helfend, supra*, 2 Cal.3d at pp. 11–12, fn. omitted.) Quoting from commentary, the court noted: " 'For the present system, however, the rule seems to perform a needed function. At the very least, it removes some complex issues from the trial scene. At its best, in some cases, it operates as an instrument of what most of us would be willing to call justice.' [Citation.]" (*Helfend, supra*, 2 Cal.3d at p. 7, fn. 6.)

Thus, "We therefore reaffirm our adherence to the collateral source rule in tort cases in which the plaintiff has been compensated by an independent collateral source—such as insurance, pension, continued wages, or disability payments—for which he had actually or constructively . . . paid or in cases in which the collateral source would be recompensed from the tort recovery through subrogation, refund of benefits, or some other arrangement. Hence, we conclude that in a case in which a tort victim has received partial

compensation from medical insurance coverage entirely independent of the tortfeasor the trial court properly followed the collateral source rule and foreclosed defendant from mitigating damages by means of the collateral payments." (*Helfend, supra*, 2 Cal.3d at pp. 13–14.)

Subsequent cases have reaffirmed the continuing vitality of the rule. In *Arambula v. Wells* (1999) 72 Cal.App.4th 1006 [85 Cal.Rptr.2d 584] (*Arambula*), the plaintiff, who worked for a family-owned company, continued to receive his weekly salary from his brother after a car accident. The plaintiff did not prove at trial that his brother had the right to be reimbursed, and the trial court therefore instructed the jury not to award damages for lost earnings. (*Id.* at pp. 1008–1009.)

We found this was error, holding that the collateral source rule allowed the plaintiff to recover despite his receiving compensation from an external source. (*Arambula, supra*, 72 Cal.App.4th at p. 1009.) We held that public policy weighed heavily in favor of applying the collateral source rule to gratuitous payments. (*Id.* at p. 1012.) Further, we noted that the "collateral source rule also recognizes the inadequacies of damage awards for personal injuries. That is because '[l]egal "compensation" for personal injuries does not actually compensate. Not many people would sell an arm for the average or even the maximum amount that juries award for loss of an arm. Moreover the injured person seldom gets the compensation he "recovers," for a substantial attorney's fee usually comes out of it. The Rule helps to remedy these problems inherent in compensating the tort victim.' (Note, *California's Collateral Source Rule and Plaintiff's Receipt of Uninsured Motorist Benefits* (1986) 37 Hastings L.J. 667, 672.)" (*Id.* at pp. 1009–1010, fn. 1.)

*Hanif*

In 1988, the Third District decided *Hanif, supra*, 200 Cal.App.3d 635. The plaintiff, Hanif, was struck and injured by an automobile on the property of the defendant, Yolo County's housing authority. (*Id.* at pp. 637–638.) The trial court apportioned 80 percent of the fault to the driver and 20 percent to the defendant. (*Id.* at p. 639.) Hanif was awarded special damages of $53,314 for past medical expenses and home attendant care and $250,000 in general damages. (*Ibid.*)

The defendant appealed. At trial, over the defendant's objection, Hanif had introduced evidence that the reasonable value of the medical services rendered was more than the amount Medi-Cal had actually paid the providers. (*Hanif, supra*, 200 Cal.App.3d at p. 639.) The trial court had found the

reasonable value of physician services was $4,618, although Medi-Cal had paid $2,283. Similarly, the reasonable value of the hospital services was $27,000, although Medi-Cal had paid $16,494. At trial, there was no evidence that Hanif was or would be liable for the difference, and the balance was written off by the hospital. The trial court, however, awarded Hanif the entire reasonable value of the medical services rendered. (*Ibid.*)

The appellate court held this was error. It began by noting "there is no question here that Medi-Cal's payment for all injury-related medical care and services does not preclude plaintiff's recovery from defendant, as special damages, of the amount paid. This follows from the collateral source rule. [Citations.]" (*Hanif, supra*, 200 Cal.App.3d at pp. 639–640.) "For purposes of analysis, plaintiff is deemed to have personally paid or incurred liability for these services and is entitled to recompense accordingly. This is not unreasonable or unfair in light of Medi-Cal's subrogation and judgment lien rights [citations]." (*Id.* at p. 640.) The court further noted there was no question regarding the appropriate measure of damages: "[A] person injured by another's tortious conduct is entitled to recover the reasonable value of medical care and services reasonably required and attributable to the tort. [Citations.]" (*Ibid.*)

Thus, the issue before the court in *Hanif* was "whether the 'reasonable value' measure of recovery means that an injured plaintiff may recover from the tortfeasor more than the actual amount he paid or for which he incurred liability for past medical care and services." (*Hanif, supra*, 200 Cal.App.3d at p. 640.) The court held: "Fundamental principles underlying recovery of compensatory damages in tort actions compel the following answer: no." (*Ibid.*)

The court explained: " 'In tort actions damages are normally awarded for the purpose of *compensating* the plaintiff for injury suffered, i.e., restoring him as nearly as possible to his former position, or giving him some pecuniary equivalent. [Citations.]' [Citations.]" (*Hanif, supra*, 200 Cal.App.3d at p. 640, original italics.) " '*The primary object of an award of damages* in a civil action, and the fundamental principle on which it is based, are *just compensation* or indemnity for the loss or injury sustained by the complainant, *and no more* [citations].' [Citation.]" (*Id.* at pp. 640–641, original italics.) " 'A plaintiff in a tort action is not, in being awarded damages, to be placed in a better position than he would have been had the wrong not been done.' [Citation.]" (*Id.* at p. 641.) Because medical expenses fall within the category of economic damages, representing actual pecuniary loss, the court reasoned

that "an award of damages for past medical expenses in excess of what the medical care and services actually cost constitutes overcompensation." (*Ibid.*)

The court believed that confusion may have been created by a comment to one of the jury instructions given in the case, BAJI No. 1410. The comment stated: " 'The reasonable value of medical and nursing care may be recovered although rendered gratuitously or paid for by a source independent of the wrongdoer.' " (*Hanif, supra,* 200 Cal.App.3d at p. 641.) The court stated: "This comment, however, merely restates the collateral source rule, which is not an issue in this case. The issue here is the import of the term 'reasonable value' when applied to past medical services, to which neither BAJI No. 14.10 nor its comment provide any clue." (*Ibid.*)

The *Hanif* court went on to note that " 'Reasonable value' is a term of limitation, not of aggrandizement. (See Civ. Code, § 3359.) Thus, when the evidence shows a sum certain to have been paid or incurred for past medical care and services, whether by the plaintiff or by an independent source, that sum certain is the most the plaintiff may recover for that care despite the fact it may have been less than the prevailing market rate." (*Hanif, supra,* 200 Cal.App.3d at p. 641.)

After reviewing several cases discussing the reasonable value standard, the court stated, "Implicit in the above cases is the notion that a plaintiff is entitled to recover *up to, and no more than,* the actual amount expended or incurred for past medical services so long as that amount is reasonable. [Citation.] This notion is supported by the following comment on 'value' from the Restatement Second of Torts, which comment directly addresses the point at issue here: 'When the plaintiff seeks to recover for expenditures made or liability incurred to third persons for services rendered, normally the amount recovered is the reasonable value of the services rather than the amount paid or charged. *If, however, the injured person paid less than the exchange rate, he can recover no more than the amount paid,* except when the low rate was intended as a gift to him.' (Italics added, Rest.2d Torts, § 911, com. h.)" (*Hanif, supra,* 200 Cal.App.3d at p. 643, fn. omitted.) "The rule we express is consistent with fundamental principles underlying recovery in tort of compensatory damages, and it is in harmony with other rules and practices flowing from those principles, such as the practice of discounting future damages to present value [citation], the bar against double recovery [cita-tions], the rule that damages not be imaginary [citation], the rule that when damages may be calculated by either of two alternative measures the plaintiff may recover only the lesser [citations], and the rule that damages be mitigated where reasonably possible [citations]." (*Ibid.*)

Thus, the court held, the trial court had erroneously awarded Hanif an amount exceeding that which was actually paid for past medical care and services. Accordingly, the amount of special damages was reduced to the amount actually paid. (*Hanif, supra,* 200 Cal.App.3d at pp. 643–644.) It is problematic that the *Hanif* court did not see the connection between "reasonable value" and the long line of cases on the collateral source rule, simply stating, without analysis, that the collateral source rule did not apply. This case changed the emphasis from a plaintiff's entitlement under the collateral source rule (see, e.g., *Arambula, supra,* 72 Cal.App.4th at p. 1009 ["Under the collateral source rule, plaintiffs in personal injury actions can still recover full damages even though they already have received compensation for their injuries from such 'collateral sources' as medical insurance"]) to "a plaintiff is entitled to recover *up to, and no more than,* the actual amount expended or incurred for past medical services so long as that amount is reasonable" (*Hanif, supra,* 200 Cal.App.3d at p. 643). It could be the *Hanif* court intended only to harmonize a medical lien into a collateral source scheme, but it is unclear, because the opinion states the collateral source rule "is not an issue in this case." (*Id.* at p. 641.)

*Nishihama*

*Nishihama, supra,* 93 Cal.App.4th 298, was decided in 2001 by the First District. The plaintiff, Nishihama, was injured when she tripped and fell in a crosswalk maintained by the defendant, the City of San Francisco (the City). (*Id.* at p. 301.) With respect to special damages for medical care, the jury awarded Nishihama $20,295, including $17,168 for hospital care. (*Id.* at p. 306.) The $17,168 reflected the amount the hospital billed at its normal rates. (*Ibid.*)

Nishihama, however, was insured by Blue Cross, which had a contract with the hospital. The hospital agreed Blue Cross would pay reduced rates for services to its members, and the hospital agreed to accept Blue Cross's payment as payment in full. (*Nishihama, supra,* 93 Cal.App.4th at p. 306.) Under the terms of that agreement, the hospital accepted $3,600 as payment in full for Nishihama's care. (*Id.* at pp. 306–307.) The City conceded it was required to pay Nishihama the $3,600—the issue it raised was whether it was required to pay Nishihama the difference between the $3,600, representing payment in full, and the amount the hospital billed, $17,168. (*Ibid.*) Nishihama did not contest that the hospital had accepted $3,600 as payment in full.[2]

---

[2] The court addressed, at some length, and squarely rejected any argument that Nishihama might be liable for the difference under California's Hospital Lien Act, Civil Code sections 3045.1–3045.6. "We find that [the hospital]'s lien rights do not extend beyond the amount it agreed to receive from Blue Cross as payment in full for services provided to plaintiff. As [the

Thus, quoting *Hanif*, the court found that Nishihama was entitled to $3,600, because it represented " 'a sum certain to have been paid or incurred for past medical care and services . . . .' " (*Nishihama, supra*, 93 Cal.App.4th at p. 306.) Like *Hanif*, the *Nishihama* court did not discuss the collateral source rule.

*Subsequent Cases*

Cases after *Nishihama* have assumed the rule set forth in *Hanif/Nishihama* is valid, but have not applied it for other reasons. In *Greer v. Buzgheia* (2006) 141 Cal.App.4th 1150 [46 Cal.Rptr.3d 780], the court held that the defendant had failed to preserve any right to a postverdict hearing by failing to request a verdict form that contained a separate entry for past medical expenses. (*Id.* at p. 1158.) In *Katiuzhinsky v. Perry* (2007) 152 Cal.App.4th 1288 [62 Cal.Rptr.3d 309], the court distinguished *Hanif/Nishihama*, holding that it did not apply where the plaintiff's medical lien was sold to a third party. In that instance, the plaintiff was still entitled to the full amount billed by the medical provider, as long as that amount was legitimately incurred and the plaintiff remained liable for its payment. (*Id.* at p. 1291.)

Our Supreme Court has not squarely addressed the rule set forth in *Hanif/Nishihama*. *Olszewski v. Scripps Health* (2003) 30 Cal.4th 798 [135 Cal.Rptr.2d 1, 69 P.3d 927] (*Olszewski*), addressed whether federal Medicaid law, which limits provider reimbursement, preempts California statutes permitting medical providers to obtain liens against personal injury claims, judgments, or settlements of Medi-Cal beneficiaries for the full charges for services. The court reluctantly held that state law was preempted, noting: "By invalidating liens filed pursuant to [Welfare and Institutions Code] section 14124.791, we give the third party tortfeasor a windfall at the expense of the innocent health care provider. Because the provider may no longer assert a lien for the full cost of its services, the Medicaid beneficiary may only recover the amount payable under Medicaid as his or her medical expenses in an action against a third party tortfeasor. (See *Hanif v. Housing Authority*[, *supra*,] 200 Cal.App.3d [at pp.] 639–644 . . . [where the provider has relinquished any claim to additional reimbursement, a Medicaid beneficiary may only recover the amount payable under the state Medicaid plan as medical expenses in a tort action].) As a result, the tortfeasor escapes liability for the full amount of the medical expenses he or she wrongfully caused.

hospital] has been paid that amount, it has no lien rights in the damages awarded to plaintiff, and the court, therefore, erred in permitting the jury to award plaintiff an amount in excess of $3,600 for the services provided by [the hospital]." (*Nishihama, supra*, 93 Cal.App.4th at p. 307.)

Such a result not only benefits the party who should be responsible for the medical costs of the beneficiary at the expense of the blameless provider, it also harms society as a whole. Because health care providers cannot recover the full costs of their services from responsible tortfeasors, they must either charge more to those innocent patients who can pay in order to recoup their losses or stop providing medical care to the needy. In the end, everybody suffers but the third party tortfeasor. We therefore urge the Legislature to remedy this anomaly in a manner consistent with federal law." (*Id.* at pp. 826–827.)

In *Parnell v. Adventist Health System/West* (2005) 35 Cal.4th 595 [26 Cal.Rptr.3d 569, 109 P.3d 69], the court addressed what a hospital could recover under a lien, where, similar to the facts in *Nishihama*, it treated the plaintiff at a discounted rate. The court ultimately held that the hospital's payment was limited to the amount it agreed to accept via the plaintiff's insurance contract. (*Id.* at p. 609.) It could not, therefore, recover the difference between the amount it billed and the amount paid by the plaintiff's insurance, either from the plaintiff or the tortfeasor. In a footnote, the court stated: "Because our holding relies solely on the absence of a debt underlying the lien, we do not reach, and express no opinion on, the following issues: (1) whether *Olszewski v. Scripps Health*[, *supra*,] 30 Cal.4th 798 . . . and *Hanif v. Housing Authority*[, *supra*,] 200 Cal.App.3d 635 . . . apply outside the Medicaid context and limit a patient's tort recovery for medical expenses to the amount actually paid by the patient notwithstanding the collateral source rule . . . ." (*Id.* at pp. 611–612, fn. 16.) Thus, we have no clear direction from the court outside the context of Medicaid.

*Judicial Restraint and Preserving the Collateral Source Rule*

In the modern medical setting, paperwork abounds. There are a variety of private, public, and supplemental insurance requirements and conditions, a range of negotiating groups, copayment requirements, provider agreements, contractual and statutory liens, subrogation claims, reimbursement provisions, and statutory rights, both state and federal, that surround every visit to a doctor or hospital. Phrases such as "network," "nonnetwork" and "balance billing" are increasingly used. This complicated and delicate scheme includes legislation specifically designed to work within the collateral source rule (see, e.g., Civ. Code, § 3333.1; Gov. Code, § 985, subd. (f)), while at the same time recognizing that the measure of damages "is the amount which will compensate for all the detriment proximately caused" (Civ. Code, § 3333). Disastrous anticonsumer consequences could result if a court were to issue an

opinion contrary to the legislative scheme which now surrounds a rule which was originally judge made.

During oral argument, the parties and the court embraced a hypothetical situation wherein a patient received a hospital bill of $20,000. The hypothetical hospital agreed to settle the bill for a payment of $16,000 from the patient's insurance company. The parties could not agree what the hypothetical patient's damages would be under Civil Code section 3333 in a personal injury lawsuit filed against a third party. They argued there would be different damages for the hypothetical insured patient/plaintiff than damages incurred by an uninsured or indigent plaintiff. In the case of an uninsured or indigent plaintiff, of course, a hospital would not have settled its bill for $16,000. Under those circumstances, some of the parties argued, the damages for an insured patient/plaintiff would be $16,000, while the damages for an uninsured or indigent person with the same injuries and the same hospital bill would be $20,000.

Much has changed since the collateral source rule first entered our jurisprudence. In addition to the changes noted above, the parties inform the court the same diagnostic test for the same injury might result in a different billing amount, depending on the contract between or among businesses which are not parties to a case before the court.

Given this setting, I decline to apply the postverdict hearing schemes[3] set forth in *Hanif/Nishihama* to private insurance situations, absent either statutory authority or endorsement from the Supreme Court. I believe the rule abrogates, in fact if not in law, the collateral source rule and the sound policy behind it. The plaintiff who has insurance receives less than her uninsured counterpart, while the defendant benefits from the plaintiff's prudence. This drastically undermines one of the key policy rationales behind the rule.

Changes to the collateral source rule, in my view, should be promulgated by the Legislature. Other courts have agreed. In discussing some of the Legislature's adjustments to the collateral source rule, the court in *Smock*,

---

[3] Procedural confusion as to the form of this hearing demonstrates another problem with judge-made rules of this kind. None of the cases address precisely what form this hearing should take or what standard of review should be applied on appeal. The trial judge in *Greer v. Buzgheia, supra*, 141 Cal.App.4th 1150, seemed to think the hearing should be neither a motion for new trial nor a motion for judgment notwithstanding the verdict. (*Id.* at p. 1155.) The judge in the instant case treated the motion as one for partial judgment notwithstanding the verdict. The lack of a clear procedure is in itself problematic for both trial courts and litigants alike. As if to highlight the level of confusion about the *Hanif/Nishihama* process, while the parties in the instant case agreed during oral argument that plaintiff had the burden of proving the amount of reasonable medical expenses during trial, they each contended the other had the posttrial burden of proving the amount actually paid.

*supra*, 138 Cal.App.4th at page 888, noted: "If other modifications or limitations to this long-established rule are warranted, their creation is best left to the Legislature. (See *Helfend, supra*, 2 Cal.3d at p. 13 ['the proposed changes, if desirable, would be more effectively accomplished through legislative reform'].)" Similarly, in *Olszewski, supra*, 30 Cal.4th at page 827, the Supreme Court urged legislative action to harmonize state and federal law with respect to hospital liens. Legislative action to clarify how damages are to be calculated when the amount billed exceeds the amount paid by a plaintiff's insurer would resolve this issue, but in the absence of such direction, I believe the traditional collateral source rule, and Civil Code section 3333, should be followed.

**FYBEL, J.,** Concurring.—Over six years ago, the Court of Appeal, First Appellate District, Division One, in *Nishihama v. City and County of San Francisco* (2001) 93 Cal.App.4th 298 [112 Cal.Rptr.2d 861] (*Nishihama*), analyzed the law and relied on a case decided by the Third Appellate District in 1988, *Hanif v. Housing Authority* (1988) 200 Cal.App.3d 635, 639–644 [246 Cal.Rptr. 192] (*Hanif*), and held: "A plaintiff in a personal injury action is entitled to recover from the defendant tortfeasor, the reasonable value of medical services rendered to the plaintiff, including the amount paid by a collateral source, such as an insurer. As medical expenses fall into the category of economic damages, they represent actual pecuniary loss caused by the defendant's wrong. (Civ. Code, § 1431.2, subd. (b)(1); *Hanif v. Housing Authority*[, *supra*,] 200 Cal.App.3d [at p.] 641 . . . .) 'Thus, when the evidence shows a sum certain to have been paid or incurred for past medical care and services, whether by the plaintiff or by an independent source, that sum certain is the most the plaintiff may recover for that care despite the fact that it may have been less than the prevailing market rate.' (*Hanif v. Housing Authority, supra*, 200 Cal.App.3d at p. 641.)" (*Nishihama, supra*, 93 Cal.App.4th at p. 306.)

The *Nishihama* and *Hanif* principles were recently followed and applied by the Third Appellate District in *Katiuzhinsky v. Perry* (2007) 152 Cal.App.4th 1288, 1294–1295 [62 Cal.Rptr.3d 309] (*Katiuzhinsky*). The *Katiuzhinsky* court correctly distinguished *Nishihama* and reversed because the plaintiffs in *Katiuzhinsky* incorrectly recovered *less* at trial than the amount agreed upon by the provider and the health plan and incurred by the plaintiffs. (*Id.* at pp. 1296–1298.)

The principles explained and applied in *Nishihama* and *Hanif* are soundly based on California statutes—Civil Code sections 3281,[1] 3282,[2] 3333,[3] and 1431.2, subdivision (b)(1)[4]—and the Restatement Second of Torts, section 911, comment h.[5] I write separately principally to express my view that the analysis and holdings of *Nishihama* and *Hanif* correctly apply and enforce the collateral source rule based on California statutes. The collateral source rule was followed because the plaintiffs in those cases recovered all medical costs actually incurred, even though the costs were paid by others (e.g., a health plan).

In *Nishihama*, the plaintiff suffered personal injuries as a result of her fall in a crosswalk maintained by a municipality. (*Nishihama, supra,* 93 Cal.App.4th at p. 301.) The jury awarded her approximately $20,000 for the cost of her medical care, including approximately $17,000 for the reasonable value of care she received from her medical provider. (*Id.* at p. 306.) The amount of $17,000 was based on the provider's normal rates. (*Ibid.*) The plaintiff participated in a health plan administered by Blue Cross which had a

---

[1] Civil Code section 3281 states: "Every person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor in money, which is called damages."

[2] Civil Code section 3282 states: "Detriment is a loss or harm suffered in person or property."

[3] Civil Code section 3333 states: "For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this Code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not."

[4] Civil Code section 1431.2, subdivision (b)(1) states: "For purposes of this section, the term 'economic damages' means objectively verifiable monetary losses including medical expenses, loss of earnings, burial costs, loss of use of property, costs of repair or replacement, costs of obtaining substitute domestic services, loss of employment and loss of business or employment opportunities."

[5] Restatement Second of Torts, section 911, comment h, pages 476–477 states: "The measure of recovery of a person who sues for the value of his services tortiously obtained by the defendant's fraud or duress, or for the value of services rendered in an attempt to mitigate damages, is the reasonable exchange value of the services at the time and place. This may be distinct from and may be either greater or less than an amount that would be given for harm resulting from the loss of time by the injured person. (See § 924). [¶] If the services are rendered in a business or profession in which there is a rate for them definitely established by custom, the customary rate controls. If there is no customary rate, evidence of what the claimant has received and what other persons receive for similar services, and other factors, including the reputation of the person giving the services, the skill with which the work is done and the difficulty and danger of the work, are taken into consideration. [¶] When the plaintiff seeks to recover for expenditures made or liability incurred to third persons for services rendered, normally the amount recovered is the reasonable value of the services rather than the amount paid or charged. If, however, the injured person paid less than the exchange rate, he can recover no more than the amount paid, except when the low rate was intended as a gift to him. A person can recover even for an exorbitant amount that he was reasonable in paying in order to avert further harm. (See § 919)."

contract with the provider. (*Ibid.*) Under that contract, the provider agreed that Blue Cross would pay reduced rates for certain services to its members and the provider would accept Blue Cross's payment as payment in full for those services. (*Ibid.*) Pursuant to that contract, the provider accepted $3,600 (instead of $17,000) as payment in full for the services it rendered to the plaintiff. (*Id.* at pp. 306–307.) The plaintiff did not contest the assertion the provider accepted $3,600 as payment in full. (*Id.* at p. 307.)

The court in *Nishihama* held that, by virtue of the contract between the provider and Blue Cross, the plaintiff was obligated to pay the provider only $3,600. (*Nishihama, supra*, 93 Cal.App.4th at p. 307.) The plaintiff had no responsibility to pay the provider more than $3,600 because the provider had been paid in full. (*Id.* at pp. 307–308.) As correctly and succinctly recognized by the court in *Nishihama*: "The amount that a hospital is entitled to receive as payment necessarily turns on any agreement it has with the injured person or the injured person's insurer." (*Id.* at p. 308.)

I agree with the analysis of *Nishihama* and *Hanif* limiting recovery by an injured plaintiff to the amount of actual damages incurred, as required by California statutes and as recognized by the Restatement Second of Torts.

### The Absence of Evidence in This Record

The court in *Nishihama* had before it the contract between the provider and Blue Cross, the statements that showed the amount ($3,600) paid by Blue Cross to the provider, evidence of the amount accepted by the provider (and the converse, the amount written off by the provider), and, importantly, an acknowledgment by the plaintiff that the provider accepted $3,600 as payment in full for its services. As I will next explain in detail, none of this important evidence is in the record in this case.

1. *The Billing Statement to Plaintiff.* The billing statement in our record is a printed form with unidentified, unauthenticated handwriting on it. A portion of the handwriting reads: "* She is a retired nurse. So [crossed-out word] all the charges written off??" So, we do not even know if the amounts with the printed notation "w/o" on the statement were actually written off or whether any proposed writeoff was questioned. There was no evidence explaining the printing on the statement, much less explaining the handwriting. Plaintiff repeatedly objected to the trial court's consideration of this statement on foundational grounds and I believe those objections had merit.

2. *No Contract Between Provider and Health Plan.* No contract appears in the appellate record or was presented to the trial court establishing that the provider would accept payments from the health plan in amounts less than its normal rates and charges.

3. *No Contract Between Plaintiff and Provider.* We have no record of any agreement between plaintiff and the provider. For example, we do not know if plaintiff was accepted for treatment on contractual terms under which the provider agreed to charge her rates lower than normal rates (pursuant to a contract between the provider and the health plan).

4. *No Contract Between Plaintiff and Health Plan.* We do not even know if there was an agreement between the health plan and plaintiff, much less what it stated.

5. *No Acknowledgment by Provider, Health Plan, or Plaintiff That Plaintiff Has No Further Financial Responsibility to Provider or Health Plan.* Our record contains no proof that plaintiff is protected from being charged additional amounts for any of those services by the provider or by the health plan (beyond an agreed-upon deductible or copayment). Unlike *Nishihama,* plaintiff in this case has not acknowledged that the provider has accepted payment in full. Indeed, in its motion to request the reduction of the jury verdict, defendant in this case stated: "However, plaintiff's billing records reflect that at least $57,394.24 were written off by her medical provider; have not been paid; and are not *currently* owed by any person or entity." (Italics added.) This equivocal statement raises insurmountable questions as to the amount of plaintiff's liability. The judgment could not be affirmed on the basis of this statement of "current" liability by defendant alone. Furthermore, we do not know if the provider in this case was "in network" or not, or was a "preferred provider" or not. Thus, we do not know whether the provider asserts so-called "balance billing" to recover money from plaintiff (i.e., the claimed additional amount due if a patient is treated by an "out of network" provider under certain circumstances).

Nor is there any statement by the health plan that plaintiff has no further obligation to the plan itself. We do not know if the health plan will charge plaintiff for using an out-of-network provider or for other charges under the plan documents.

For all of these reasons, the trial and appellate records are woefully inadequate and we could not affirm this judgment even if we followed *Nishihama.*

### The Hearing to Determine Whether to Reduce the Verdict to the Amount of Actual Damages

If the proper application of the collateral source rule includes reducing a verdict to the amount actually paid or incurred by the plaintiff or by a collateral source such as a health plan, a hearing is necessary and appropriate to

determine the correct amount. If a reduction is not proper under the collateral source rule, a hearing would not be necessary or appropriate. Therefore, whether such a hearing should be held is dependent on whether a reduction to the total amount actually paid by any source or incurred by the plaintiff is proper under the collateral source rule. The propriety of such a hearing is not a separate issue. If such a hearing is to be held, the trial court has the statutory authority under Evidence Code sections 320 (order of proof) and 402 (procedure for determining evidentiary matters) to hold the hearing.

A petition for a rehearing was denied July 16, 2008.