KLEIN, J.,* Dissenting.
I respectfully dissent. I agree Rebecca Howell (Howell), who was insured by PacifiCare under a preferred provider organization (PPO) health insurance policy, is not entitled to recover the gross amount of her potentially inflated medical bills. However, I disagree with the majority insofar as it concludes Howell’s recovery of medical damages must be capped at the discounted amount her medical providers agreed to accept as payment in full from her insurer. Rather, Howell should be entitled to recover the reasonable value or market value of such services, as determined by expert testimony at trial, just as would be the case if the injured person had not purchased insurance or if the medical services had been donated.
The majority, while it states “we do not alter the collateral source rule as articulated in Helfend [v. Southern Cal. Rapid Transit Dist. (1970) 2 Cal.3d 1 [84 Cal.Rptr. 173, 465 P.2d 61]] and the Restatement” (maj. opn., ante, at p. 565), creates a significant exception to this state’s long-standing collateral source rule. The majority draws a bright line and limits Howell’s recovery of medical damages to “no more than the medical providers accepted in full payment for their services.” (Id. at p. 563.) Thus, Howell is left in a worse position than an uninsured individual or one who was a donee of medical services, persons who are entitled to recover the full reasonable value of their medical care. (Arambula v. Wells (1999) 72 Cal.App.4th 1006, 1012 [85 Cal.Rptr.2d 584] (Arambula) [tortfeasor cannot mitigate damages because of a third party’s charitable gift].) Neither law nor policy supports such an anomalous outcome.
The majority holds the “negotiated rate differential” (the difference between the original billed amount of $189,978.63 and the lesser amount accepted by the providers as payment in full) lies outside the operation of the collateral source rule because plaintiff did not suffer any economic loss in the amount of the negotiated rate differential and therefore said sum is not recoverable by plaintiff.
*569 The majority fails to recognize the difference between the reasonable value of Howell’s care (hypothetically, $75,000) and the lesser sum Howell’s preferred providers agreed to accept as payment in full ($59,691.73), did constitute a payment by others, namely, the medical providers, toward the cost of treating Howell. Howell’s medical providers, as participants in PacifiCare’s PPO network, wrote off & portion of her bills, pursuant to their agreements with PacifiCare. By acquiring the PPO policy, Howell purchased not only indemnity coverage but also access to the negotiated discounts 'between her health insurer and her medical providers. Therefore, any difference between the reasonable value of Howell’s treatment, and the lesser amount the providers agreed to accept as payment in full, was a benefit Howell is entitled to retain under the collateral source rule. There is little justification for allowing a defendant tortfeasor to avoid liability for the reasonable value of a plaintiff’s medical expenses, where such value exceeds the negotiated' payment.
The task before this court is twofold. In the era of managed care, the court is grappling with the problem of injured plaintiffs recovering compensatory damages based on allegedly inflated medical bills, while continuing to adhere to the collateral source rule and the policies underlying the rule.
The Court of Appeal held Howell is entitled to recover the gross undiscounted amount of her medical bills (i.e., $189,978.63), including the full amount of the “negotiated rate differential” (i.e., the difference between the original billed amount and the lesser amount accepted by the providers as payment in full).
In contrast, the majority limits Howell’s recovery as economic damages for past medical expenses to “no more than the medical providers accepted in full payment for their services” (maj. opn., ante, at p. 563), amounting to $59,691.73.
There is an intermediate position between these two ends of the spectrum, one more consistent with both the collateral source rule and with the deterrent function of tort law: For purposes of determining the application of the collateral source rule, a plaintiff who has purchased private health insurance, just like a plaintiff who is a donee or is uninsured, should be entitled to recover from the defendant tortfeasor economic damages for past medical expenses an amount not to exceed the reasonable value of medical expenses which the plaintiff incurred for tortiously caused injuries. Howell should be entitled to recover the reasonable value of her medical care, no more and no less. That the plaintiff may have purchased a negotiated rate benefit is not, for purposes of the collateral source rule, relevant.
*570 By limiting the plaintiff’s recovery to the reasonable value of the treatment (an amount which the plaintiff is required to prove at trial), I would eliminate the potential mischief created by the Court of Appeal’s opinion, which enables a plaintiff to recover damages for medical expenses based on potentially inflated medical bills, while still preserving the full protection of the collateral source rule for all injured plaintiffs, whether or not covered by private insurance.
Under the reasonable value approach, in the event the reasonable value of a plaintiff’s treatment exceeds the amount the medical providers have agreed to accept as payment in full from the plaintiff’s insurer, such difference would be allocated to the plaintiff, rather than to the defendant tortfeasor. This approach preserves the long-standing collateral source rule, and at the same time, prevents a plaintiff from recovering excessive damages based on potentially inflated medical bills.
1. Policy considerations underlying the collateral source rule.
a. The collateral source rule represents the sound policy judgment of encouraging citizens to purchase insurance and denying the tortfeasor the benefits of the victim’s providence.
It has long been settled in California that “ ‘[djamages recoverable for a wrong are not diminished by the fact that the party injured has been wholly or partly indemnified for his loss by insurance effected by him, and to the procurement of which the wrongdoer did not contribute . . . .’ ” (Loggie v. Interstate Transit Co. (1930) 108 Cal.App. 165, 169 [291 P. 618]; accord, Helfend v. Southern Cal. Rapid Transit Dist., supra, 2 Cal.3d at p. 6 (Helfend,); Peri v. L. A. Junction Ry. (1943) 22 Cal.2d 111, 131 [137 P2d 441].)
In Helfend, this court engaged in an extensive review of the policy arguments for and against the collateral source rule and reaffirmed its adherence to the rule as it has developed in California. In the context of insurance payments for medical treatment, where the rule is most frequently applied, the court stated the collateral source rule “embodies the venerable concept that a person who has invested years of insurance premiums to assure his medical care should receive the benefits of his thrift. The tortfeasor should not garner the benefits of his victim’s providence, [f] The collateral source rule expresses a policy judgment in favor of encouraging citizens to purchase and maintain insurance for personal injuries and for other eventualities. Courts consider insurance a form of investment, the benefits of which become payable without respect to any other possible source of funds. If we were to permit a tortfeasor to mitigate damages with payments from plaintiff’s insurance, plaintiff would be in a position inferior to that of having *571 bought no insurance, because his payment of premiums would have earned no benefit. Defendant should not be able to avoid payment of full compensation for the injury inflicted merely because the victim has had the foresight to provide himself with insurance.” (Helfend, supra, 2 Cal.3d at pp. 9-10, italics added & fn. omitted.)
b. Deterrence of tortious conduct; the collateral source rule ensures the tortfeasor pays the full cost of its negligence or wrongdoing.
When an injured plaintiff has received collateral compensation from insurance, a gift, or other sources (such as the expense borne by the preferred providers, which wrote off a portion of their bills pursuant to the PPO contract), allowing a deduction for damages in that amount would result in a windfall for the tortfeasor and underpayment for the injury. (Helfend, supra, 2 Cal.3d at p. 10; Arambula, supra, 72 Cal.App.4th at pp. 1013-1014.) Because the tortfeasor would not be paying the full cost of its negligence or wrongdoing, a deduction for collateral compensation would distort the deterrent function of tort law. (See Katz, Too Much of a Good Thing: When Charitable Gifts Augment Victim Compensation (2003) 53 DePaul L.Rev. 547, 564 [if a charitable gift to the plaintiff reduces tort recovery, the defendant “pays less than the full social costs of his conduct and is underdeterred”].)
2. The difference between the reasonable value of the medical services and the lesser sum the medical provider agreed to accept as payment in full constitutes a “payment by others” on behalf of the injured person and therefore is a benefit within the meaning of the collateral source rule.
The majority acknowledges the negotiated rate differential is not a gift by the provider to the injured plaintiff, but it regards the negotiated rate differential as merely a price discount. However, because the issue at bench is the application of the collateral source rule, involving (1) an injured party, (2) the injured party’s PPO health insurance policy, and (3) a negligent tortfeasor, treating the negotiated rate differential as nothing more than a discount is, in my view, inappropriate.
The majority properly recognizes: “Medical providers that agree to accept discounted payments by managed care organizations or other health insurers as full payment for a patient’s care do so not as a gift to the patient or insurer, but for commercial reasons and as a result of negotiations. As plaintiff herself explains, hospitals and medical groups obtain commercial benefits from their agreements with health insurance organizations; the agreements guarantee the providers prompt payment of the agreed rates and *572 often have financial incentives for plan members to choose the providers’ services.” (Maj. opn., ante, at p. 558, italics added.)
However, the fact that Howell’s medical providers, as participants in a PPO network, agreed to accept discounted payments motivated by their economic self-interest, rather than with a donative intent, should not make a difference in the analysis of the issues presented herein. The majority’s analysis rests upon a distinction between commercial motive and donative intent, a distinction the majority has failed to explain. Had Howell been uninsured, or had Howell’s providers donated their services, Howell would be entitled to recover the reasonable cost of her medical care. It is anomalous to limit Howell’s recovery of medical damages to the deeply discounted amount her providers accepted as payment in full, merely because Howell was insured under a PPO policy, rather than being uninsured or a donee. Howell should not be penalized, nor should the negligent tortfeasor be rewarded, based on the manner in which her PPO policy is structured.
Clearly, medical providers in a PPO network benefit from their status as preferred providers in significant ways: the preferred providers obtain access to an expanded client base; the preferred providers have greater certainty of being paid for their services; and the preferred providers can expect relatively prompt reimbursement. In return for these commercial benefits, the preferred providers agree with the insurer to accept reduced fees for their services. The insurer likewise derives a commercial benefit from the PPO system through greater cost control and reduced costs for patient care. At the same time, the PPO system has advantages for the consumer who enjoys reduced fees when obtaining care through a preferred provider.
This recognition of the existence of a tripartite negotiated relationship among the insured, the insurer, and the medical providers, informs the proper characterization of the “negotiated rate differential.” It is undisputed the negotiated rate differential was not a gratuitous payment by the providers. Nor should the negotiated rate differential be deemed a mere price discount by a vendor. Rather, the negotiated rate differential was, in effect, a “payment by a third party,” namely, the medical providers, which wrote off a portion of Howell’s bills. It is undisputed that “[w]hen, as here, the costs of medical treatment are paid in whole or in part by a third party unconnected to the defendant, the collateral source rule is implicated.” (Maj. opn., ante, at p. 551, italics added.) Accordingly, to the extent the reasonable value of Howell’s care exceeded the amount accepted by her providers in full payment, that sum should be considered a benefit covered by the collateral source rule.
Although the majority recognizes the collateral source rule is implicated whenever the costs of medical treatment are paid in whole or in part by a *573 nontortfeasor third party, it takes the position the negotiated rate differential, i.e., the discount medical providers offer the insurer, was “never paid by or on behalf of the injured person” (maj. opn., ante, at p. 548, italics added), and therefore does not come within the collateral source rule.
Said conclusion overlooks the fact the preferred providers absorbed a portion of the reasonable cost of treating Howell by writing off a portion of her bills. The fee reduction, a benefit to which Howell was entitled under the PPO policy, was purchased with costly health insurance premiums and was an essential part of the bargain between Howell and PacifiCare. Thus, it is entirely appropriate to recognize the difference between the reasonable value of the medical services and the lesser amount the providers agreed to accept in full payment for their services, as a payment made by others, namely, the providers, on Howell’s behalf. A consistent application of the collateral source rule, as it prevails in the United States, entitles Howell to retain that benefit. (See pt. 5., post.)
3. Limiting plaintiff’s recovery to the reasonable cost of care prevents a windfall recovery by the victim based on potentially inflated medical bills.
The problem in the instant case arises due to the practice of inflating medical charges and then deeply discounting them, which has become the norm in this era of managed care.
“Before managed care, hospitals billed insured and uninsured patients similarly. In 1960, ‘[t]here were no discounts; everyone paid the same rates’—usually cost plus ten percent. But as some insurers demanded deep discounting, hospitals vigorously shifted costs to patients with less clout.” (Hall & Schneider, Patients as Consumers: Courts, Contracts, and the New Medical Marketplace (2008) 106 Mich. L.Rev. 643, 663, fhs. omitted.) As a consequence, “only uninsured, self-paying U.S. patients have been billed the full charges listed in hospitals’ inflated chargemasters . . . .” (Reinhardt, The Pricing Of U.S. Hospital Services: Chaos Behind A Veil Of Secrecy (2006) 25 Health Affairs 57, 62; see Health & Saf. Code, § 1339.51, subd. (b)(1) [chargemaster, or hospital charge description master is “a uniform schedule of charges represented by the hospital as its gross billed charge for a given service or item, regardless of payer type”].)
Therefore, to reconcile the collateral source rule with the problem posed by potentially inflated medical bills, a uniform rule should apply. Irrespective of whether a plaintiff has private health insurance, is a donee or is uninsured, the plaintiff should be entitled to recover as economic damages for past medical expenses the reasonable value of the medical expenses the plaintiff incurred for tortiously caused injuries.
*574 With this approach, in the event the reasonable value of the plaintiff’s treatment exceeds the amount the medical providers agreed to accept as payment in full from plaintiff’s insurer, that difference is allocated to the plaintiff, rather than to the tortfeasor. This fully preserves the collateral source rule, and at the same time prevents a plaintiff from recovering excessive damages pursuant to potentially inflated medical bills.
4. Collateral source rule does not yield a double recovery.
Helfend observed that insurance policies increasingly provide for either subrogation or refund of benefits upon recovery from the tortfeasor, thus transferring the risk from the victim’s .insurer to the tortfeasor by way of the victim’s tort recovery. (Helfend, supra, 2 Cal.3d at pp. 10-11.) Helfend explained that viewed from this perspective, the collateral source rule does not permit the plaintiff a double recovery, as critics of the rule have charged. (Ibid.) Further, “[t]he collateral source rule partially serves to compensate for the attorney’s share and does not actually render ‘double recovery’ for the plaintiff.” (Id. at p. 12.)
Consequently, it should be recognized that where an insured plaintiff prevails and obtains an award of economic damages for past medical expenses from a third party, the insured generally is contractually required to reimburse the health insurer to the extent the insured recovers on her judgment against the tortfeasor. In addition to having to reimburse the health insurer, the plaintiff will have incurred attorney fees to prosecute the claim for economic damages.
Thus, because the plaintiff’s award of economic damages for past medical expenses is likely to be largely transferred from the defendant (or from the defendant’s insurer) to the plaintiff’s insurer and to the plaintiff’s attorney, the award is not likely to yield a windfall to the plaintiff.
In addition, it should be recognized the collateral source rule serves to protect the “person who has invested years of insurance premiums to assure [her] medical care.” (Helfend, supra, 2 Cal.3d at pp. 9-10.) However, the award of compensatory damages does not expressly include reimbursement to the plaintiff for those premiums. It is only through the application of the collateral source rule that the plaintiff is rewarded for maintaining his or her own health insurance for personal injuries.
For all these reasons, any perceived windfall to the plaintiff as a consequence of the collateral source rule represents a relatively minor portion of plaintiff’s overall recovery of economic damages. Further, as between the injured person and the tortfeasor, the equities dictate such benefit should be *575 allocated to the injured party, not to the negligent tortfeasor. Indeed, it is difficult to understand just what policy considerations justify denying the thrifty or prudent plaintiff who has purchased private health insurance the full benefit of his or her own foresight, and instead, transferring that benefit to the tortfeasor.
5. This court should follow the majority rule in the United States, which is consistent with the Restatement Second of Torts.
The majority, limiting plaintiff’s recovery of medical damages to the amount her medical providers accepted as payment in full from plaintiff’s insurer, has failed to explain why California should align itself with the minority view in the United States.
By way of background, courts across the country have considered the issue of whether the collateral source rule allows a plaintiff to recover insurance writeoffs. Three general approaches have emerged: (1) the reasonable value of services', (2) the benefit of the bargain; and (3) the actual amounts paid. (See, e.g., Martinez v. Milburn Enterprises, Inc. (2010) 290 Kan. 572, 591-592 [233 P.3d 205].)
“The vast majority of courts to consider the issue follow the common-law rule articulated in section 924 of the Restatement and permit plaintiffs to seek the reasonable value of their expenses without limitation to the amount that they pay or that third parties pay on their behalf. See Wills v. Foster, 229 Ill2d 393, 892 NE2d 1018, 1031 (Ill 2008) (so stating).” (White v. Jubitz Corp. (2009) 347 Or. 212, 237 [219 P.3d 566].)
The Restatement Second of Torts, section 924, is entitled “Harm to the Person.” It provides, in part, that “[o]ne whose interests of personality have been tortiously invaded is entitled to recover damages for past or prospective HO • • • HQ (c) reasonable medical and other expenses . . . .” (Ibid., italics added.) Comment f to that section, entitled “Expenses,” provides that an “injured person is entitled to damages for all expenses and for the value of services reasonably made necessary by the harm.” (Rest.2d Torts, § 924, com. f, p. 526, italics added.) Comment f then instructs that “[t]he value of medical services made necessary by the tort can ordinarily be recovered although they have created no liability or expense to the injured person, as when a physician donates his services.” (Id., at p. 527, italics added, referring to Rest.2d Torts, § 920A.) Thus, “the Restatement permits a plaintiff to recover from a tortfeasor the reasonable value of the medical treatment that *576 he or she receives whether plaintiff is liable to pay or pays the medical providers’ charges for that treatment, the providers waive those charges, or a third party pays or otherwise satisfies those charges.” (White v. Jubitz Corp., supra, 219 P.3d at p. 579, second italics added.) Under the Restatement rule, “plaintiffs who incur the same injuries as a result of a defendant’s tort[i]ous actions may claim and recover the same damages.” (Ibid.; see also Martinez v. Milburn Enterprises, Inc., supra, 290 Kan. at p. 602 [reasonable value of medical services is the fairest approach; “ ‘to do otherwise would create separate categories of plaintiffs based on the method used to finance medical expenses’ ” (italics omitted)].)
The majority’s rationale for eschewing the majority rule is that those out-of-state decisions “rest on reasoning we have considered and rejected above, or on statutory provisions without California parallel.” (Maj. opn., ante, at p. 566, fn. 10, italics added.) However, insofar as the majority does not discuss how the statutes of our sister states differ from our damages statutes (see, e.g., Civ. Code, §§ 3281, 3282, 3333), it is unpersuasive.
6. Statutory provisions in the Civil Code do not bar plaintiff’s recovery of the difference between the reasonable value of the medical services and the lesser amount the providers agreed to accept as full payment.
The majority takes the position that unlike the law of other states, California’s damages statutes bar Howell from recovering as damages for medical expenses anything in excess of the amount her medical providers agreed to accept as payment in full. That conclusion is unwarranted. Our damages statutes do not preclude this court from following the majority rule and authorizing compensation to Howell for the reasonable value of her medical treatment.
The pertinent statutes are as follows: Every person “who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor in money, which is called damages.” (Civ. Code, § 3281.) The measure of damages generally recoverable in tort is “the amount which will compensate for all the detriment proximately caused” by the tort. (Id., § 3333.) Detriment is “a loss or harm suffered in person or property.” (Id., § 3282.)
The maxims embodied in these statutory provisions do not dictate the conclusions reached by the majority. It is undisputed that “[w]hen, as here, the costs of medical treatment are paid in whole or in part by a third party unconnected to the defendant, the collateral source rule is implicated.” (Maj. opn., ante, at p. 551, italics added.)
*577 As this dissent has sought to explain, in the instant case the costs of Howell’s medical treatment were partially borne by third parties, namely, Howell’s preferred medical providers, which wrote off a significant portion of her bills pursuant to a tripartite contract for which valuable consideration was paid. Therefore, any difference between the reasonable value of Howell’s care and the lesser amount the providers accepted as payment in full constitutes detriment, which is recoverable by Howell from the tortfeasor.
7. Determining the reasonable value of plaintiff’s medical care; procedure in future cases.
The majority precludes any inquiry into the reasonable value of the patient’s care and limits the plaintiff’s recovery of medical damages to the amount her preferred providers accepted as payment in full. The majority’s bright-line approach rests on the assumption “the negotiated prices providers accept from insurers” is equivalent to the reasonable value, or “exchange value of medical services the injured plaintiff has been required to obtain.” (Maj. opn., ante, at p. 562.)
However, the reasonable value of the patient’s care is a question for the trier of fact. It may be that the sum the providers accepted in full payment is equivalent to the reasonable value of the care, or it may be that the reasonable value of the care is a higher figure. Preferred providers discount their fees to PPO members because the providers “obtain commercial benefits from their agreements with health insurance organizations” (maj. opn., ante, at p. 558), such as an expanded clientele. This court should not speculate that the amount a preferred provider accepts as payment in full from the insurer is equivalent to the reasonable value of the services rendered.
The inquiry at trial should be the same, irrespective of whether the injured plaintiff was covered by a PPO health insurance policy, was a donee, or was uninsured. The plaintiff’s burden is to prove the reasonable value of the medical care needed to treat his or her tortiously caused injuries.
“Due to the realities of today’s insurance and reimbursement system, in any given case, that determination is not necessarily the amount of the original bill or the amount paid. Instead, the reasonable value of medical services is a matter for the jury to determine from all relevant evidence. Both the original medical bill rendered and the amount accepted as full payment are admissible to prove the reasonableness and necessity of charges rendered for medical and hospital care. [(j[] The jury may decide that the reasonable value of medical care is the amount originally billed, the amount the medical provider accepted as payment, or some amount in between.” (Robinson v. *578 Bates (2006) 112 Ohio St.3d 17, 23 [857 N.E.2d 1195, 1200].) California jurors are as capable as jurors in Ohio or elsewhere of making that determination.
A plaintiff may attempt to rely on the undiscounted medical bills to establish economic damages, but if such billing is inflated, it would be exposed on cross-examination and through defense expert testimony. For example, if a chest X-ray was billed at $1,500 but the evidence shows the provider has rarely, if ever, obtained that sum in payment, or if the evidence shows the billed amount significantly exceeds the charges by other medical providers for such treatment, the trier of fact would take such evidence into consideration in assessing the reasonable value of the treatment. A jury, with the help of expert opinion testimony, is capable of weighing the evidence and determining the reasonable value of the medical services provided to the plaintiff.
Finally, in the event the verdict as to past medical expenses is excessive, the defendant can move for a new trial on that basis. (Code Civ. Proc., § 657, subd. 5.)
8. Any modification to the collateral source rule should be left to the Legislature.
There is nothing unique about PPO insurance coverage that requires this court to carve out a special rule governing the negotiated rate differential in this type of health insurance. An injured person with PPO coverage, like uninsured plaintiffs or donees, should be able to recover the reasonable value of care required to treat the tortiously caused injuries.
Any change to the collateral source rule should be left to the Legislature. (Olsen v. Reid (2008) 164 Cal.App.4th 200, 213-214 [79 Cal.Rptr.3d 255] (conc. opn. of Moore, J.).) The Legislature twice has abrogated or modified the collateral source rule, in the Medical Injury Compensation Reform Act (Civ. Code, § 3333.1, subd. (a) [health care providers]) and in Government Code section 985 (public entity defendants), and can do so again if it sees fit.
“It may well be that the collateral-source rule itself is out of sync with today’s economic realities of managed care and insurance reimbursement for medical expenses. However, whether plaintiffs should be allowed to seek recovery for medical expenses . . . only for the amount negotiated and paid by insurance is for the [Legislature] to determine.” (Robinson v. Bates, supra, 857 N.E.2d at p. 1201.)
*579 9. Proposed disposition.
The judgment of the Court of Appeal should be reversed with directions to remand the matter to the trial court for a limited new trial to determine, and award, the reasonable value of the medical services which Howell received for her tortiously caused injuries.
Appellant’s petition for a rehearing was denied November 2, 2011.

 Presiding Justice of the Court of Appeal, Second Appellate District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.