[No. C000119. Third Dist. Apr. 21, 1988.]

SAJJAD HANIF, a Minor, etc., Plaintiff and Respondent, v. HOUSING AUTHORITY OF YOLO COUNTY, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

\* Pursuant to rule 976.1 of the California Rules of Court, the Reporter of Decisions is directed to publish all portions of this opinion except parts I and II.

636

## COUNSEL

Robert M. Cole and Cole & Cole for Defendant and Appellant.

James V. Nolan and Chalmers, Sans, Gardner & Nolan for Plaintiff and Respondent.

## OPINION

EVANS, J.—This personal injury action arises out of an accident that occurred on defendant Housing Authority's property in which an automobile struck and injured plaintiff, Sajjad Hanif. Following a bench trial, judgment was entered for plaintiff. Defendant appeals, challenging various of the court's findings and conclusions respecting liability and special damages. We shall modify the judgment to reduce the amount of special damages awarded. As modified, the judgment will be affirmed.

### FACTS

On September 3, 1979, at about 7 p.m., plaintiff, then seven years old, and Betty Brady, an adult companion, were cutting flowers from oleander bushes along a two-foot strip of land abutting Donelly Circle in Woodland. Donelly Circle is a 26-foot-wide paved, unmarked roadway running through defendant's housing project. The strip of land on which the oleander bushes were planted is directly across Donelly Circle from the housing project and is owned and maintained by defendant. Growth from the tall

bushes was spilling across the curb and protruding into Donelly Circle for a distance of one to two feet. Plaintiff dropped his scissors and, in retrieving them, stepped onto the roadway and into the path of an oncoming car being driven by Lydia Ulloa. Plaintiff did not see the car. Brady attempted to pull him out of harm's way, but she was unsuccessful. Both she and plaintiff were struck. The impact forced plaintiff under the car, and he was dragged a considerable distance. He suffered severe and permanent injuries.

According to eyewitnesses Bob Barton and Vernon Washabaugh, who were attending a nearby ice cream vending truck, Ulloa was traveling about 35 miles per hour, and her car was brushing the oleander bushes as it proceeded along the road. Plaintiff was struck by the front of the car midway between the right headlight and the center of the grill. Ulloa did not slow down or alter her course, either before or after striking Brady and plaintiff; she stopped only after Barton had flagged her down.

Ulloa and her passenger, Maria Enriquez, testified they were driving into the sun at the time but that their vision was not significantly impaired. The car's sun visor was down and the windshield appeared to be clean. Ulloa and Enriquez saw the ice cream truck in the distance, which was stopped on the opposite side of the road. Neither one of them saw Brady or plaintiff, however, and they were initially unaware the car had struck anybody; they attributed the thumping noises under the car to a possible flat tire.

Housing Authority groundskeeping and maintenance personnel, as well as the Housing Authority's director, testified that the oleander bushes were trimmed back from the roadway and beyond the curb "as needed," ordinarily in the spring and the fall, but on no regular schedule. The reason for trimming them back was to permit an unimpeded path for the city's streetsweepers.

William Neuman, an expert on accident reconstruction and highway design and safety, testified that the oleander bushes, at the time of the accident, were in a condition contrary to accepted safety standards and practices in roadway maintenance. The bushes, protruding as they did into the roadway, would tend to obscure the vision of both drivers and pedestrians, creating a classic "dart out" hazard.

Woodland Police Officer Craig Vierra, who investigated the accident, as well as Barton and Washabaugh, testified that children commonly played in and around the oleander bushes along Donelly Circle. Donald Parker, the Housing Authority's director, knew that many children lived in the housing project, and the Housing Authority did not prohibit them from playing in the area of the oleander bushes.

The trial court apportioned 80 percent of the fault for this accident to Ulloa and 20 percent to defendant.[1] Considering plaintiff's age, the court found no comparative fault on his part. As to defendant, a public entity, the court found the overhanging and untrimmed oleander bushes, which protruded into the roadway and obscured Ulloa's and plaintiff's view of one another, constituted a dangerous condition on defendant's property and were a proximate cause of plaintiff's injuries. The court found defendant's negligent failure to have kept the bushes trimmed back from the roadway created a reasonably foreseeable risk of the kind of injury that did in fact occur. The court awarded, as special damages for past medical expenses and home attendant care, $53,314 and, as general damages for pain and suffering and impaired future earning capacity, $250,000. Defendant's motion for new trial was denied, and this appeal followed.

## I, II*

. . . . . . . . . . . . . . . . . . . . . .

## III

Over defendant's objection, plaintiff introduced evidence that the "reasonable value" of the medical services rendered in this case was in excess of amounts Medi-Cal had actually paid the providers. The trial court found the reasonable value of the physician services to have been $4,618, whereas Medi-Cal had paid only $2,823, and the reasonable value of the hospital services to have been $27,000, whereas Medi-Cal had paid only $16,494. There was no evidence, however, that plaintiff was or would become liable for the difference. And the balance between the amount billed to Medi-Cal and the amount paid was "written off" by the hospital. Nevertheless, the court awarded, as special damages, the reasonable value of the medical services rendered. On appeal, defendant contends the court erred in its application of the controlling measure of damages in this regard, arguing that plaintiff's recovery is limited to the amount actually paid.[2] We agree the trial court's award overcompensated plaintiff for this item of damages.

■ Preliminarily, we note there is no question here that Medi-Cal's payment for all injury-related medical care and services does not preclude plaintiff's recovery from defendant, as special damages, of the amount paid.

---

[1] Ulloa is a nonappealing defendant, against whom a default was entered below.

* See footnote, *ante,* page 635.

[2] Defendant had stipulated at trial that the medical services at issue here were reasonably necessary and attributable to the accident and the amount Medi-Cal had actually paid for these services was reasonable.

This follows from the collateral source rule. (See *Helfend* v. *Southern Cal. Rapid Transit Dist.* (1970) 2 Cal.3d 1, 6-16 [84 Cal.Rptr. 173, 465 P.2d 61, 77 A.L.R.3d 398]; *De Cruz* v. *Reid* (1968) 69 Cal.2d 217, 223-224 [70 Cal.Rptr. 550, 444 P.2d 342]; *Reichle* v. *Hazie* (1937) 22 Cal.App.2d 543, 547-548 [71 P.2d 849]; Rest.2d Torts, § 920A & com. b; see generally Annot., Collateral Source Rule: Receipt of Public Relief or Gratuity as Affecting Recovery in Personal Injury Action (1977) 77 A.L.R.3d 366; cf. *Waite* v. *Godfrey* (1980) 106 Cal.App.3d 760, 766-775 [163 Cal.Rptr. 881].) For purposes of analysis, plaintiff is deemed to have personally paid or incurred liability for these services and is entitled to recompense accordingly. This is not unreasonable or unfair in light of Medi-Cal's subrogation and judgment lien rights (Welf. & Inst. Code, § 14124.70 et seq.; cf. Gov. Code, § 985, subd. (f)(1), added by Stats. 1987, ch. 1201, § 25). (See *Helfend* v. *Southern Cal. Rapid Transit Dist., supra,* 2 Cal.3d at pp. 10-11.)

■ Nor is there any question about the appropriate measure of recovery: a person injured by another's tortious conduct is entitled to recover the reasonable value of medical care and services reasonably required and attributable to the tort. (*Melone* v. *Sierra Railway Co.* (1907) 151 Cal. 113, 115 [91 P. 522]; *Gimbel* v. *Laramie* (1960) 181 Cal.App.2d 77, 81 [5 Cal.Rptr. 88]; see BAJI No. 14.10 (7th ed. 1987 pocket pt.) p. 13.)

The question here involves the application of that measure, i.e., whether the "reasonable value" measure of recovery means that an injured plaintiff may recover from the tortfeasor more than the actual amount he paid or for which he incurred liability for past medical care and services. Fundamental principles underlying recovery of compensatory damages in tort actions compel the following answer: no.

"In tort actions damages are normally awarded for the purpose of *compensating* the plaintiff for injury suffered, i.e., restoring him as nearly as possible to his former position, or giving him some pecuniary equivalent. [Citations.]" (Italics in original, 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 842, p. 3137; see Civ. Code, §§ 3281 ["Every person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor in money, which is called damages."], 3282 ["Detriment is a loss or harm suffered in person or property."], 3333 ["For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not."].) *"The primary object of an award of damages* in a civil action, and the fundamental principle on which it is based, are *just compensation* or indemnity for the loss or injury sustained by the complainant, *and no more* [citations]." (Ital-

ics in original, *Mozzetti* v. *City of Brisbane* (1977) 67 Cal.App.3d 565, 576 [136 Cal.Rptr. 751].) "A plaintiff in a tort action is not, in being awarded damages, to be placed in a better position than he would have been had the wrong not been done." (*Valdez* v. *Taylor Automobile Co.* (1954) 129 Cal.App.2d 810, 821-822 [278 P.2d 91].)

In tort actions, medical expenses fall generally into the category of economic damages, representing actual pecuniary loss caused by the defendant's wrong. (See Civ. Code, § 1431.2, subd. (b)(1).) Applying the above principles, it follows that an award of damages for past medical expenses in excess of what the medical care and services actually cost constitutes overcompensation.

A misunderstanding may have arisen in this case from the language of BAJI No. 14.10, which states the measure of damages for personal injury as follows: "The *reasonable value* of medical [hospital and nursing] care, services and supplies reasonably required and actually given in the treatment of the plaintiff to the present time [and the present cash value of the reasonable value of similar items reasonably certain to be required and given in the future]." (Italics added.) A comment to BAJI No. 14.10 states: "The reasonable value of medical and nursing care may be recovered although rendered gratuitously or paid for by a source independent of the wrongdoer." (BAJI No. 14.10 (7th ed. 1986) p. 160.) This comment, however, merely restates the collateral source rule, which is not an issue in this case. The issue here is the import of the term "reasonable value" when applied to past medical services, to which neither BAJI No. 14.10 nor its comment provide any clue. "Reasonable value" is a term of limitation, not of aggrandizement. (See Civ. Code, § 3359.) Thus, when the evidence shows a sum certain to have been paid or incurred for past medical care and services, whether by the plaintiff or by an independent source, that sum certain is the most the plaintiff may recover for that care despite the fact it may have been less than the prevailing market rate.

In *Melone* v. *Sierra Railway Co., supra,* 151 Cal. 113, the defendant appealed, contending error in instructing the jury on the measure of damages. "In instructing the jury upon the measure of damages the court declared as one of the elements of damage, 'Such sum as will compensate him for the *expense, if any,* he has *paid or incurred* in the employment of a physician and the purchase of drugs during the time he was disabled by the injuries, not exceeding the amounts alleged in the complaint.' It is objected to this instruction that the correct measure of damage in this regard is not the amount which he may have paid or become liable for, but the necessary and reasonable value of such services as may have been rendered him. Such *reasonable sum,* in other words, as has been *necessarily expended or in-*

*curred* in treating the injury. Such, unquestionably, is the true rule, yet we do not believe that the jury could have been led into error prejudicial to the defendant by the instruction which was given. The reasonableness of the expenses which plaintiff had incurred was not disputed." (Italics added, *id.,* at p. 115.)

In *Townsend* v. *Keith* (1917) 34 Cal.App. 564 [168 P. 402], the defendant appealed, contending the court erred in failing to instruct the jury to limit damages for past medical expenses to their reasonable value: "The expenses incurred amount to approximately two hundred dollars, i.e., one hundred and fifty dollars for physician, ten dollars for a specialist, thirty-two dollars hospital bill and thirty dollars or forty dollars for medicines. This, on its face, does not seem to be unreasonable. The reasonableness of the expenses which plaintiff had incurred was not disputed by defendant on the trial, and therefore the failure of the trial court's charge to the jury to *limit its finding to the reasonable value of the expenses incurred* was not an error which prejudiced the defendant. [Citation.]" (Italics added, *id.,* at p. 566.)

In *Castro* v. *Giacomazzi Bros.* (1949) 92 Cal.App.2d 39 [206 P.2d 688], the defendant appealed, also contending instructional error. The jury had been instructed with the following measure of damages: " '. . . the sum that will fairly and reasonably compensate plaintiffs, or either of them, for the expenses, if any, that each has reasonably and necessarily incurred or paid for medical attention, such as physicians, hospitalization and drugs, and caring for him—and drugs and curing him of any injuries suffered as a direct and proximate result of the accident complained of; provided that you find from the evidence that plaintiffs sustained any injuries.' " (*Id.,* at p. 46.) Noting that there appeared to be in the record no evidence of medical expenses, the court held, "The amount was to be computed, 'if any.' *If there was no evidence of medical exenses, there was no necessity to give the instruction,* but it has not been shown that defendants were prejudiced thereby." (Italics added, *id.,* at pp. 46-47.)

And in *Guerra* v. *Balestrieri* (1954) 127 Cal.App.2d 511 [274 P.2d 443], the defendant appealed, contending error in the giving of an instruction concerning the cost of medical care: "He claims error because no evidence of the cost of such services was introduced, although there was some evidence of the nature and extent of the services rendered. [¶] The proper measure is the reasonable value of such services, not the amount paid or incurred therefor, although the amount paid or incurred would be some evidence of value. [Citation.] There should be some evidence concerning the value of professional services of a physician or surgeon. There was no such evidence in this case. [¶] However, we fail to see how the defendant could have been prejudiced. The instruction expressly limited the recovery for

such items to the reasonable value thereof '*not exceeding the cost to the plaintiff,*' and there was no evidence of any such cost to him." (Italics added, *id.,* at p. 520.)

Implicit in the above cases is the notion that a plaintiff is entitled to recover *up to, and no more than,* the actual amount expended or incurred for past medical services so long as that amount is reasonable. (And see generally Annot., Necessity and Sufficiency, in Personal Injury or Death Action, of Evidence as to Reasonableness of Amount Charged or Paid for Accrued Medical, Nursing, or Hospital Expenses (1967) 12 A.L.R.3d 1347.) This notion is supported by the following comment on "value" from the Restatement Second of Torts, which comment directly addresses the point at issue here: "When the plaintiff seeks to recover for expenditures made or liability incurred to third persons for services rendered, normally the amount recovered is the reasonable value of the services rather than the amount paid or charged. *If, however, the injured person paid less than the exchange rate, he can recover no more than the amount paid,* except when the low rate was intended as a gift to him." (Italics added, Rest.2d Torts, § 911, com. h.)[3] The record fails to disclose any evidence or any inference from evidence that the low rate charged was intended as a gift to the plaintiff.

The rule we express is consistent with fundamental principles underlying recovery in tort of compensatory damages, and it is in harmony with other rules and practices flowing from those principles, such as the practice of discounting future damages to present value (see Rest.2d Torts, § 913A & com. a [discounting to present value prevents "over-compensation"]), the bar against double recovery (see *Mozzetti* v. *City of Brisbane, supra,* 67 Cal.App.3d at p. 576; 4 Witkin, Summary of Cal. Law, Torts, *supra,* § 844, p. 3139), the rule that damages not be imaginary (see *Earp* v. *Nobmann* (1981) 122 Cal.App.3d 270, 294-295 [175 Cal.Rptr. 767]), the rule that when damages may be calculated by either of two alternative measures the plaintiff may recover only the lesser (see *Ferraro* v. *Southern Cal. Gas Co.* (1980) 102 Cal.App.3d 33, 49-50 [162 Cal.Rptr. 238]; 4 Witkin, Summary of Cal. Law, Torts, *supra,* §§ 909-910, 918-919, pp. 3196-3198, 3203-3204), and the rule that damages be mitigated where reasonably possible (see 4 Witkin, Summary of Cal. Law, Torts, *supra,* §§ 870-875, pp. 3158-3162; 2 Speiser, Krause & Gans, The American Law of Torts (1985) § 8:15, p. 524 ["mitigation of damages" includes anything that tends to show the claimed damages are not as large as the plaintiff asserts]).

We conclude, therefore, that the trial court in this case erred in awarding plaintiff, as special damages for past medical care and services, the reason-

---

[3] Any suggestion that Medi-Cal benefits are gratuities or otherwise intended as gifts to the recipient in this context is belied by Medi-Cal's subrogation and lien rights.

able value of that amount exceeding the actual amount paid. Because defendant does not dispute that the amount paid by Medi-Cal was reasonable and was for services reasonably required and proximately caused by the accident, it is appropriate for this court, on the record before us, to simply modify the judgment accordingly rather than to remand for a retrial on the issue. The trial court found the amount paid by Medi-Cal for accrued medical care and services to have been $19,317. Defendant does not dispute that amount. The trial court awarded, as the "reasonable value" of those services, the sum of $31,618. Plaintiff was therefore overcompensated in the amount of $12,301, by which amount the judgment will be reduced.

## IV

The trial court found that, for the four-month period (Oct. 1979 through Jan. 1980) immediately following plaintiff's initial hospitalization, and excluding an intervening ten-day second hospitalization, plaintiff's parents provided the following home attendant care: helping plaintiff get into and out of bed, helping him to and from the bathroom, changing his bandages, exercising his limbs, feeding him, administering prescribed medications, applying creams and lotions to his body, attending him while he was in pain (nighttime as well as daytime), assisting him in the use of a wheelchair, assisting him in learning to walk again, assisting him in the use of crutches, and generally acting as practical nurse. The court found that 24-hour home attendant care was reasonably necessary and actually provided by plaintiff's parents, that plaintiff's parents had insufficient resources to hire a home nurse, that Medi-Cal disapproved home nursing care for plaintiff, and that the reasonable value of such home nursing care, could it have been obtained, was $8 per hour. These findings are supported by uncontroverted evidence. Damages were awarded for the reasonable value of this home attendant care in the amount of $21,696, calculated by multiplying 2,712 hours (113 days x 24 hours per day) times $8. On appeal, defendant contends that the reasonable value of home attendant care provided by the plaintiff's parents is an improper item of damages and that, even assuming it is recoverable, the amount awarded is excessive under the circumstances. Neither contention has merit.

■ It is established that "The reasonable value of nursing services required by the defendant's tortious conduct may be recovered from the defendant even though the services were rendered by members of the injured person's family and without an agreement or expectation of payment. Where services in the way of attendance and nursing are rendered by a member of the plaintiff's family, the amount for which the defendant is liable is the amount for which reasonably competent nursing and attendance by others could have been obtained. The fact that the injured party

had a legal right to the nursing services (as in the case of a spouse) does not, as a general rule, prevent recovery of their value, . . ." (Fns. omitted, 22 Am.Jur.2d, Damages, § 207, pp. 288-289; see *Bradford* v. *Edmands* (1963) 215 Cal.App.2d 159, 167-168 [30 Cal.Rptr. 185]; *Large* v. *Williams* (1957) 154 Cal.App.2d 315, 320 [315 P.2d 919]; *Seedborg* v. *Lakewood Gardens etc. Assn.* (1951) 105 Cal.App.2d 449, 454 [233 P.2d 943].)

Thus, in *Rodriguez* v. *McDonnell Douglas Corp.* (1978) 87 Cal.App.3d 626 [151 Cal.Rptr. 399], the plaintiff was entitled to recover the reasonable value of 24-hour home attendant care provided by his spouse and necessitated by the defendant's tortious conduct: "We reject the premise that the cost of attendant care, past or future, should not have been an item for consideration by the jury because of the presence of [the plaintiff's wife]. It is not part of her duties as a wife to render 24-hour-a-day attendant care." (*Id.,* at p. 661.) Moreover, the jury was entitled to calculate the reasonable value of that care on the basis of uncontroverted evidence respecting the wage ordinarily paid to those who provide such services. (*Id.,* at pp. 661-662.)

Accordingly, defendant's argument that "Since parents are expected to care for their minor child, as a parental duty, they are generally not entitled to capture any monies by way of special damages for providing for the care which the law requires them at all events to provide" is totally without support.[4]

■ Defendant's second contention that, even assuming the reasonable value of home attendant care is compensable, the amount awarded in this case is excessive must also be rejected. Defendant failed to raise this issue on its motion for new trial.[5] " 'The point that damages are excessive cannot be raised for the first time on appeal, but must be presented to the lower court on the motion for new trial.' " (*Schroeder* v. *Auto Driveaway Co.* (1974) 11 Cal.3d 908, 918 [114 Cal.Rptr. 622, 523 P.2d 662].) ■ In any event, defendant's argument that plaintiff's parents, being unskilled, are not worth the $8 per hour it would have cost to hire a trained home nurse is without merit. As observed above, the recognized measure for such attendant care is the prevailing market rate for those who perform such services. Accordingly, plaintiff's parents' relative lack of skill in professional home nursing is

---

[4] It must be emphasized in this regard that this action is on plaintiff's behalf, not that of his parents. Accordingly whatever pecuniary losses plaintiff's parents may have suffered by the experience (e.g., wage loss) is irrelevant.

[5] The only point raised in this regard on the new trial motion was that recovery of the reasonable value of home attendant care was an improper item of damages in the first instance. No contention was made that, even assuming it was a proper item for consideration, the amount awarded was excessive under the circumstances.

irrelevant. Additionally, defendant failed to produce any evidence to controvert plaintiff's evidence that $8 per hour was a reasonable rate of compensation. That rate not appearing unreasonable on its face, the court did not err in accepting it. In like fashion, the court did not err in calculating the award based on 24-hour-a-day care. The court was entitled to consider the nature and the value of the services rendered as shown by the evidence and to draw upon its own judgment and experience in determining a reasonable amount to be awarded. (See *Rodriguez* v. *McDonnell Douglas Corp.*, *supra,* 87 Cal.App.3d at p. 662; *Seedborg* v. *Lakewood Gardens etc. Assn.*, *supra,* 105 Cal.App.2d at p. 454.) The amount awarded was not excessive.

The judgment is modified by reducing the special damages award by $12,301. As modified, the judgment is affirmed.

Puglia, P. J., and Marler, J., concurred.