179 Cal.App.4th 686 (2009)
REBECCA HOWELL, Plaintiff and Appellant,
v.
HAMILTON MEATS & PROVISIONS, INC., Defendant and Respondent.
No. D053620.
Court of Appeals of California, Fourth District, Division One.
November 23, 2009.
*688 LaFave & Rice, John J. Rice; Basile Law Firm, J. Jude Basile; Law Offices of J. Michael Vallee and J. Michael Vallee for Plaintiff and Appellant.
Hinton, Alfert & Sumner, Scott H.Z. Sumner and Jeremy N. Lateiner for Consumer Attorneys of California as Amicus Curiae on behalf of Plaintiff and Appellant.
Tyson & Mendes and Robert F. Tyson for Defendant and Respondent.
*689 Greines, Martin, Stein & Richland and Robert A. Olson for Association of Southern California Defense Counsel as Amicus Curiae on behalf of Defendant and Respondent.
Horvitz & Levy, David S. Ettinger and H. Thomas Watson for Association of California Insurance Companies and Personal Insurance Federation of California as Amici Curiae on behalf of Defendant and Respondent.

OPINION
NARES, J.

SUMMARY AND HOLDING
In this case, we must decide whether a plaintiff who has private health care insurance in a personal injury case may recover, under the collateral source rule, economic damages for the amount of past medical expenses that her health care providers have billed, but which neither plaintiff nor her health care insurer is obligated to pay because the providers have agreed, under contracts into which they have entered with the insurer, to acceptas payment in fullpayments in an amount that is less than the amount the providers have billed. Stated differently, is the difference (hereafter referred to as the negotiated rate differential)[1] between (1) the full amount of the medical providers' bills, and (2) the lesser amount paid by the private health care insurer in cash payments to the medical providers that the providers have agreed to accept as payment in full pursuant to their agreements with the insurer, a benefit within the meaning of the collateral source rule such that the plaintiff is entitled under that rule to recover the amount of the negotiated rate differential as part of her economic damages award?
In this personal injury action, plaintiff Rebecca Howell's private health care insurance policy provided indemnity coverage for medical expenses she incurred for treatment of injuries she sustained in a vehicle accident caused by the negligent driving of an employee of defendant Hamilton Meats & Provisions, Inc. (Hamilton). Howell appeals an order granting Hamilton's posttrial motion to reduce by $130,286.90 the jury's special verdict award for her past injury-related medical expenses from $189,978.63, which was the full *690 amount of her medical bills, to $59,691.73, the amount her medical providers Scripps Memorial Hospital Encinitas (Scripps) and CORE Orthopedic Medical Center (CORE) accepted as payment in full from Howell's health care insurer, PacifiCare PPO (PacifiCare). Howell contends the order should be reversed because (1) the reduction of the jury's award for her past medical expenses violates the collateral source rule, which (as we shall discuss more fully, post) generally bars at trial in a personal injury case evidence of compensation the plaintiff has received for her injuries from a source wholly independent of the defendant tortfeasor; and (2) Hamilton's motion was "procedurally improper and lacked sufficient evidence to support the claimed reduction."
(1) We hold that in a personal injury case in which the plaintiff has private health care insurance, the negotiated rate differential is a benefit within the meaning of the collateral source rule, and thus the plaintiff may recover the amount of that differential as part of her recovery of economic damages for the past medical expenses she incurred for care and treatment of her injuries. Applying this holding to the instant case, we conclude the court erred by granting Hamilton's postverdict motion to reduce the jury's special verdict award for the injury-related medical expenses Howell incurred. Accordingly, we reverse the order.

FACTUAL BACKGROUND

A. Howell's Private Health Care Insurance

Howell was seriously injured when the vehicle she was driving was struck by a truck driven by one of Hamilton's employees, who had negligently made an illegal U-turn across the lane in which Howell was traveling.
At the time of the accident, Howell had private health care insurance through PacifiCare. According to Howell, PacifiCare agreed to indemnify her for any medical charges covered by her health plan in exchange for her premium payments, subject to her responsibility for deductibles and copayments; and PacifiCare, as a regular part of its business practice, entered into contractual agreements with hospitals and other health care providers, including Scripps and CORE, to satisfy any bills incurred by PacifiCare plan members who obtained care from those providers.
Howell underwent two fusion spinal surgeries, as well as surgical procedures that took bone from her hip in an attempt to repair her neck and repaired the graft site on her hip.

*691 B. Howell's Financial Responsibility Agreements with Her Medical Providers

Before she received treatment from Scripps and CORE, Howell executed written agreements in which she agreed to be financially responsible for all charges for the medical services they provided to her. Specifically, Howell's agreement with Scripps provided that in consideration for all services she received at a Scripps facility, she was "obligated to pay the Facility's usual and customary charges for such services." She expressly acknowledged in that agreement that "she may be asked to execute a separate financial agreement for all amounts deemed to be [her] responsibility and/or not covered under an insurance policy, health care service plan, managed care program or any third party payer not a party to this agreement." An assignment of benefits clause in the agreement provided that Howell "authorize[d] direct payment to the Facility of any insurance or reimbursement from third party payers otherwise payable to or on behalf of the patient for services obtained at the Facility, at a rate not to exceed the Facility's usual and customary charges." Howell also agreed that she "remain[ed] financially responsible for charges due, but not paid, under this assignment of benefits."
Howell's agreement with CORE provided it was "[her] responsibility to pay any co-insurance, or any other balance not paid for by [her] insurance." The agreement contained an assignment of benefits clause, under which she "assign[ed] all medical and/or surgical benefits, to include major medical benefits to which [she was] entitled, including Medi Care, private insurance, and other health plans to the provider." (Italics added.)

PROCEDURAL BACKGROUND

A. Hamilton's Motion In Limine

Hamilton filed a motion in limine seeking to exclude at trial any evidence of, or reference to, those portions of Howell's medical bills that were not paid either by PacifiCare, or by Howell as a copayment. Hamilton argued that the decision in Hanif v. Housing Authority (1988) 200 Cal.App.3d 635 [246 Cal.Rptr. 192] (Hanif) "preclude[d] [Howell] from seeking to recover as medical expenses amounts billed, but not ultimately paid by PacifiCare."
Howell opposed the motion, arguing that under the collateral source rule articulated in Helfend v. Southern California Rapid Transit Dist. (1970) 2 Cal.3d 1 [84 Cal.Rptr. 173, 465 P.2d 61] (Helfend), "the gross amount of all medical bills, not any lesser amount, should be presented to the jury."
Following oral argument, the court denied Hamilton's in limine motion, ruling that Howell was entitled to present at trial evidence of the full amount *692 of the medical bills. The court, however, on a defense motion under Hanif, supra, 200 Cal.App.3d 635, deferred to a posttrial proceeding the determination of whether the jury's award of damages for Howell's past medical expenses should be reduced by any amount her medical providers may have "compromised their billing."

B. Trial and Special Jury Verdict

In their joint trial readiness conference report, the parties stipulated that the only issue to be determined at trial was the amount of damages Howell suffered as a result of the accident caused by the admitted negligence of Hamilton's driver. The report and Howell's trial exhibit list identified as exhibit No. 57 Howell's "Summary of Plaintiff's Past Medical Expenses," which itemized 19 medical expenses and indicated that those expenses totaled $189,978.63. Her trial exhibit list also indicated that copies of the billing records were attached to that exhibit.
During the trial, Dr. Timothy Peppers, who performed Howell's surgeries, testified on her behalf. After Dr. Peppers testified about his qualifications, Howell's injuries, and the medical treatment she received for those injuries, Howell's counsel showed him exhibit No. 57 and the attached billing records. Dr. Peppers testified that to the best of his knowledge the summary and billing records were a fair and reasonable representation of the medical billings.
Howell's husband, James Michael Vallee, also testified on her behalf. He indicated he had been keeping track of her injury-related medical bills, which to date totaled $189,978.63, as shown in exhibit No. 57.
The jury returned a special verdict that awarded to Howell compensatory damages in the total amount of $689,978.63, which included $189,978.63 for "[p]ast economic loss, including medical expenses," $150,000 for "[f]uture economic loss, including medical expenses," $200,000 for "[p]ast noneconomic loss (including physical pain, mental suffering, loss of enjoyment of life, disfigurement, physical impairment, inconvenience, grief, anxiety, humiliation, and emotional distress)," and $150,000 for "[f]uture noneconomic loss."

C. Hamilton's Motion to Reduce the Special Verdict for Past Medical Expenses

Before the court entered judgment, Hamilton filed a motion under Hanif, supra, 200 Cal.App.3d 635 and Nishihama v. City and County of San Francisco (2001) 93 Cal.App.4th 298 [112 Cal.Rptr.2d 861] (Nishihama) *693 seeking an order reducing the jury's special verdict for Howell's past medical expenses by $130,286.90 (i.e., from $189,978.63 to $59,691.73).
In its motion papers, Hamilton argued it was entitled to the claimed reduction under Hanif and its progeny because the amount was neither incurred nor expended for the medical services that Scripps and CORE provided to Howell in this matter.
In support of its motion, Hamilton submitted the declarations of Mourence Burris, Scripps's supervisor of customer service and collections from third parties, and Betsy Engstrom, who was employed in the accounting department of CHMB, a billing company that provided medical billing services for CORE. In his declaration, Burris indicated that Scripps's billing records showed that Scripps waived or "[wrote] off" the sum of $94,894.42 related to Howell's "surgeries and related treatment as a result of the agreement with PacifiCare," no outstanding balance remained on Howell's account, and no further collection would be pursued. In her declaration, Engstrom indicated that the entries in CORE's bill related to the services CORE provided to Howell showed that CORE had waived or "written off" the sum of $35,392.48 pursuant to its agreement with PacifiCare, and no collection from Howell would be pursued by either CORE or CHMB for the written off amount. The Burris and Engstrom declarations thus showed the total amount of the negotiated rate differential written off by Scripps and CORE was $130,286.90.[2]

Howell's opposition to Hamilton's motion
Howell filed written opposition to the motion, contending that (1) as she was not a Medi-Cal beneficiary and she was suing a private defendant, she was permitted under the collateral source rule and the applicable measure of damages to recover the full amount of the reasonable "cost" or "value" of the past medical expenses paid or incurred as a result of her injuries and not just what her private health care insurer paid to her medical providers; and (2) under the collateral source rule, the court should exclude evidence of the benefits PacifiCare "paid" to Howell's health care providers. Howell did not submit any evidence in support of her opposition to Hamilton's motion, nor did she file any evidentiary objections to the Burris and Engstrom declarations filed in support of Hamilton's motion.

D. Judgment

The court entered a judgment on the special verdict against Hamilton, awarding Howell economic damages in the amount of $339,978.63, including the sum of $189,978.63 for past medical expenses.

*694 E. Oral Arguments Regarding Hamilton's Motion

At the hearing on Hamilton's motion, which the court referred to as the "Hanif motion," Howell's counsel argued that unlike the plaintiff in Nishihama, supra, 93 Cal.App.4th 298, Howell disputed the amount that her health care insurer "paid" to the medical providers and objected that Hamilton's presentation of evidence of what Howell's insurer paid to those providers violated the collateral source rule. Counsel also asserted that under Hanif and Nishihama, Howell was entitled to recover for her past medical expenses the amount paid or incurred; that, under Parnell v. Adventist Health System/West (2005) 35 Cal.4th 595 [26 Cal.Rptr.3d 569, 109 P.3d 69] (Parnell), the amount incurred is the total amount of debt the patient incurs when she is treated by her medical providers; and, under the contracts between the private health insurer and the medical providers; what the insurer "pays" the medical providers includes both cash payments and any other consideration given in the form of "in-kind benefits."
In support of the motion, Hamilton's attorney argued that Nishihama was controlling; Howell's medical bills had been "discounted" and thus she did not owe the full billed amount of about $189,000 charged in the medical bills; she incurred no debt for the negotiated rate differential because her bills were extinguished and her accounts had a zero balance, and she was not entitled under Nishihama to recover the amount of the negotiated rate differential because that was the portion of the bills her insurer did not pay to Scripps and CORE; and the collateral source rule did not apply to that unpaid portion of the bills.
In rebuttal, Howell's counsel claimed the declarations submitted by Burris and Engstrom in support of Hamilton's motion were not evidence because "they're hearsay" and stated he doubted they "[had] ever actually seen the contracts" between PacifiCare and Howell's medical providers. Thus, he asserted, there was no competent evidence of what PacifiCare paid. Counsel repeated his claim that the word "paid" meant more than just the cash payment and included the in-kind benefits the insurer "paid" to the medical providers. Howell's attorney also argued that to determine what the insurer "paid" to the providers would require a finding of fact, and such a finding would violate the collateral source rule, which precludes evidence of the amount paid by a collateral source.

F. Order and Notice of Ruling

The court granted Hamilton's motion after taking the matter under submission. The court's minute order stated: "The Court grants [Hamilton's] motion to reduce [Howell's] past medical specials to reflect the amount the medical *695 providers accepted as payment in full of the medical bills. Contrary to [Howell's] assertions, reaching this amount does not violate the collateral source doctrine, as evidence of how or why an amount less than the full bill was accepted as payment in full is unnecessary to make this determination. Further, the trier of fact relied on evidence of the gross amount billed to [Howell], and thus had an accurate understanding of the severity of [her] injuries when it rendered its verdict. Thus a post-trial motion to reduce past medical specials to the amount that was actually paid and considered payment in full does not violate the collateral source doctrine; rather it embodies the well-established principle that a plaintiff is entitled to recover an amount that would make her whole, but not overcompensate her. . . ."
Hamilton's counsel served and filed a notice of the court's ruling, which included a copy of the court's minute order, and indicated that the amount of the judgment was reduced by $130,286.90 from $689,978.63 to $559,691.73. Howell thereafter appealed the order.

DISCUSSION

I

THE COURT'S POSTVERDICT REDUCTION OF THE JURY'S ECONOMIC DAMAGES AWARD FOR HOWELL'S PAST MEDICAL EXPENSES VIOLATED THE COLLATERAL SOURCE RULE[3]
Howell argues the order reducing the jury's award of damages for her past medical expenses from the full amount of the medical charges billed by Scripps and CORE ($189,978.63) to the amount of the cash payments her health care insurer, PacifiCare, paid to those medical providers pursuant to its agreements with them ($59,691.73), should be reversed because the reduction violates the collateral source rule. In support of this argument, Howell asserts that when she executed the written financial agreements with Scripps and CORE before she received treatment from them, she became financially liable for, and thus suffered compensable detriment by incurring, the full combined charges these medical providers billed for the services they provided. She also asserts she received two collateral source benefits from PacifiCare: *696 (1) the reduced "alternative rate" cash payments in the total amount of $59,691.73 that PacifiCare paid to Scripps and CORE on her behalf;[4] and (2) the negotiated rate differential, which she calls "other contractual consideration," valued at $130,286.90 (i.e., the remaining balance of the combined medical bills) that PacifiCare "paid" to Scripps and CORE on her behalf in the form of "non-cash benefits and services" (such as "preferred provider" listings that are endorsements of, and advertisements for, the medical providers; a guaranteed flow of patients who are members of PacifiCare's health care plan; and timely payments from pooled premiums that reduces the number of collection actions the providers must bring to collect payments from their patients).
Together, she maintains, these two collateral source benefits of her private health insurance resulted in the satisfaction or discharge of the medical services debt she incurred in the full billed amount of $189,978.63; and thus, under the collateral source rule articulated in Helfend, supra, 2 Cal.3d 1, and the Restatement Second of Torts, section 920A, comment b (discussed, post), Hamilton should not have received the benefit of her thrift and foresight in procuring health insurance through the court's postverdict reduction of the damages award for the past medical expenses she incurred as a result of the negligent driving of its employee. Thus, she argues, the court's order reducing the jury's award of damages for her past medical expenses by $130,286.90the negotiated rate differential that she, Hamilton, and the trial court refer to as the "written-off" balance or portion of her medical billsviolates the collateral source rule.
We conclude the court's order granting Hamilton's postverdict motion to reduce the jury's special verdict award for the injury-related medical expenses that Howell incurred violated the collateral source rule.

A. Applicable Legal Principles

We begin by reviewing applicable California law regarding both the measure of damages in a personal injury case such as this and the collateral source rule.

1. Measure of damages

(2) Civil Code[5] section 3333 provides that "[f]or the breach of an obligation not arising from contract, the measure of damages, except where *697 otherwise expressly provided by this Code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." (Italics added.) Section 3281 provides that "[e]very person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor in money, which is called damages." (Italics added.) Section 3282 defines the term "detriment" as "a loss or harm suffered in person or property." Section 1431.2, subdivision (b)(1) defines the term "economic damages" as "objectively verifiable monetary losses including medical expenses, loss of earnings, burial costs, loss of use of property, costs of repair or replacement, costs of obtaining substitute domestic services, loss of employment and loss of business or employment opportunities." (Italics added.)
(3) In conformity with these statutory provisions, the courts in California have held that the economic damages a plaintiff may recover in a personal injury action for past medical expenses are limited to a reasonable amount that was paid or incurred, whether by the plaintiff or a collateral source (such as the plaintiff's health care insurer), for reasonably required medical care and services that the plaintiff received and were attributable to the defendant's tortious conduct. (Melone v. Sierra Railway Co. (1907) 151 Cal. 113, 115 [91 P. 522] ["the correct measure of damage . . . is . . . the necessary and reasonable value of such services as may have been rendered him[;] [s]uch reasonable sum, in other words, as has been necessarily expended or incurred in treating the injury"]; Hanif, supra, 200 Cal.App.3d at p. 640 ["a person injured by another's tortious conduct is entitled to recover the reasonable value of medical care and services reasonably required and attributable to the tort"]; see also Katiuzhinsky v. Perry (2007) 152 Cal.App.4th 1288, 1290 [62 Cal.Rptr.3d 309] ["An injured plaintiff in a tort action cannot recover more than the amount of medical expenses he or she paid or incurred, even if the reasonable value of those services might be a greater sum."]; CACI No. 3903A ["To recover damages for past medical expenses, [plaintiff] must prove the reasonable cost of reasonably necessary medical care that [he/she] has received."]; 6 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 1670, p. 1188 ["The plaintiff is entitled to recover the reasonable cost of necessary medical and hospital services . . . ."]; Haning et al., Cal. Practice Guide: Personal Injury (The Rutter Group 2009) ¶ 3:34.1, p. 3-61 (rev. # 1, 2009) ["Plaintiff is entitled to recover the `reasonable cost' of past medical care and services necessitated by defendant's tortious conduct."].)

2. The collateral source rule

(4) California has adopted the collateral source rule. (Lund v. San Joaquin Valley Railroad (2003) 31 Cal.4th 1, 9 [1 Cal.Rptr.3d 412, 71 P.3d 770] (Lund).) The California Supreme Court explained the collateral source rule in *698 Helfend, supra, 2 Cal.3d at page 6: "[I]f an injured party receives some compensation for his injuries from a source wholly independent of the tortfeasor, such payment should not be deducted from the damages which the plaintiff would otherwise collect from the tortfeasor."
The Helfend court also explained that the collateral source rule "embodies the venerable concept that a person who has invested years of insurance premiums to assure his medical care should receive the benefits of his thrift," and "[t]he tortfeasor should not garner the benefits of his victim's providence." (Helfend, supra, 2 Cal.3d at pp. 9-10.)
Similarly, the Restatement Second of Torts, section 920A, comment b, page 514, states: "[I]t is the position of the law that a benefit that is directed to the injured party should not be shifted so as to become a windfall for the tortfeasor. If the plaintiff was himself responsible for the benefit, as by maintaining his own insurance or by making advantageous employment arrangements, the law allows him to keep it for himself."
California has also adopted "the closely related principle that, as a general rule, jurors should not be told that the plaintiff can recover compensation from a collateral source." (Lund, supra, 31 Cal.4th at p. 10.)
Payments made to, or benefits conferred on, the injured party by a source other than the defendant, someone acting on the defendant's behalf, or someone who is (or believes he is) subject to the same tort liability, are known as "collateral-source benefits." (Rest.2d Torts, § 920A, com. b, p. 514.)

B. Analysis

Howell's argument that the court's order violates the collateral source rule by limiting her recovery for past medical expenses to the amount she and PacifiCare actually paid through cash payments to her medical providers is premised on her claim (which amicus curiae CAC defends in its brief)[6] that the negotiated rate differentialthe so-called "written-off" balance of the medical bills in the amount of $130,286.90 that Howell asserts PacifiCare "paid" to Scripps and CORE in the form of contractually negotiated "noncash benefits and services"is a collateral source benefit that PacifiCare *699 conferred upon her. This claim, in turn, is premised on Howell's (and CAC's) assertion that, as a matter of law, all patients (other than the medically indigent) incur detriment in the form of financial liability for the full billed amount of their medical providers' usual and customary charges.
Howell did incur detriment in the form of personal financial liability when she executed written agreements in which she agreed to be financially responsible for all charges for the medical services they provided to her. In her written contract with Scripps, Howell agreed that, in consideration for all services she received at a Scripps facility, she was obligated to pay the facility's "usual and customary charges for such services." In her written contract with CORE, she agreed that it was "[her] responsibility to pay . . . any . . . balance not paid for by [her] insurance."
Howell's personal liability for Scripps's and CORE's usual and customary charges for the medical services they provided was a form of compensable pecuniary detriment or loss within the meaning of sections 3281, 3282, 3333, and 1431.2, subdivision (b)(1). As a result of the admitted negligent driving of Hamilton's employee, she entered into the financial responsibility agreements with Scripps and CORE and became contractually obligated to pay those incurred charges by means of her own cash payments, a collateral source such as her health care insurance, or a combination of the two.
We reject Hamilton's contentions that Howell incurred no liability, and thus no detriment, for what Hamilton calls the "waived portion" of her medical bills. The record shows that the total amount of medical care debt she incurred in this matter was $189,978.63, the combined total of Scripps's and CORE's usual and customary charges for the medical care and services they provided to her. The record also shows that Scripps and CORE agreed to accept from PacifiCare, pursuant to their agreements with PacifiCare, cash payments in the amount of $59,691.73 as payment in full for those medical charges, so that the portion of Howell's liability to those providers that we have called the negotiated rate differential was deemed satisfied and thus not payable by Howell, PacifiCare, or any other payor.
We conclude that the extinguishment of a portion of Howell's debt to Scripps and CORE in the amount of the negotiated rate differential ($130,286.90) was a benefit to Howell because she was no longer personally liable for that portion of the debt she personally incurred in obtaining medical treatment for her injuries.
We also conclude that this benefit to Howell was a collateral source benefit within the meaning of the collateral source rule because it was conferred upon her as a direct result of her own thrift and foresight in procuring private *700 health care insurance through PacifiCare, a source wholly independent of Hamilton as the defendant in this case. Under California's collateral source rule (paraphrasing Helfend, supra, 2 Cal.3d at pp. 9-10), Howell, as a person who has invested insurance premiums to assure her medical care, should receive the benefits of her thrift, and Hamilton, as the party liable for Howell's injuries, should not garner the benefits of Howell's providence. The law allows Howell to keep this collateral source benefit for herself because (paraphrasing Rest.2d Torts) she was responsible for the benefit by maintaining her own insurance. (Rest.2d Torts, § 920A, com. b, p. 514.)
Hamilton relies principally on Hanif, supra, 200 Cal.App.3d 635, and Nishihama, supra, 93 Cal.App.4th 298, as support for its contention that the court did not violate the collateral source rule by reducing the jury's award of damages for Howell's past medical expenses to the negotiated combined amount of cash payments ($59,691.73) that Scripps and CORE agreed to accept from PacifiCare. Hamilton's reliance on Hanif and Nishihama is misplaced.
In Hanif, a personal injury action brought on behalf of a minor who was struck by an automobile on the defendant public housing authority's property, the trial court awarded as special damages to the minor, who was a Medi-Cal beneficiary, the reasonable value of the past medical services he received in the amount of $31,618 that the medical providers billed to Medi-Cal, even though that award exceeded the amount Medi-Cal actually paid for those services. (Hanif, supra, 200 Cal.App.3d at pp. 639, 643-644.) The defendant appealed, arguing the trial court should have limited the minor's recovery for past medical services to the amount Medi-Cal "actually paid" ($19,317). (Id. at p. 639.) The Court of Appeal preliminarily noted it was undisputed the minor was entitled under the collateral source rule to recover from the defendant, as special damages, the sum of $19,317 that Medi-Cal paid. (Id. at pp. 639-640.) Noting that there was no evidence the minor was or would become liable for the difference between the undisputed reasonable value of the medical services and the amount Medi-Cal paid, and noting also that the hospital had "written off" the balance between the amount billed to Medi-Cal and the amount Medi-Cal paid, the Hanif court nevertheless concluded that the minor was "deemed to have personally paid or incurred liability" (italics added) for those services, and thus was "entitled to recompense accordingly," which it found was reasonable and fair "in light of Medi-Cal's subrogation and judgment lien rights." (Id. at p. 640.)
After reviewing California law pertaining to the measure of damages in personal injury actions, the Hanif court stated that, "when the evidence shows a sum certain to have been paid or incurred for past medical care and services, whether by the plaintiff or by an independent source, that sum *701 certain is the most the plaintiff may recover for that care despite the fact it may have been less than the prevailing market rate." (Hanif, supra, 200 Cal.App.3d at p. 641, italics added.) Thus, it concluded, "a plaintiff is entitled to recover up to, and no more than, the actual amount expended or incurred for past medical services so long as that amount is reasonable." (Id. at p. 643, second italics added.) Applying this measure of damages, the Hanif court held that the trial court erred in awarding to the minor plaintiff, as special damages for past medical services, the reasonable value of those services in the amount of $31,618, rather than $19,317, the "actual amount [Medi-Cal] paid." (Id. at pp. 643-644.) Apparently referring to the difference between the reasonable value of the medical services rendered and the amount Medi-Cal paid for those services, the Hanif court stated that "the collateral source rule . . . is not an issue in this case." (Hanif, supra, 200 Cal.App.3d at p. 641.)
Hamilton's reliance on Hanifis unavailing because that case is inapposite. As already discussed, Howell, who was privately insured, incurred personal liability for her medical providers' usual and customary charges. Unlike Howell, the minor in Hanif did not have private health care insurance, and he incurred no personal liability for the medical charges billed to Medi-Caland thus suffered no compensable pecuniary detriment or loss beyond his judicially "deemed" liability for the medical services he received in the amount that Medi-Cal actually paid to the medical providersbecause he was a Medi-Cal beneficiary, and (as a minor) he also lacked the capacity to enter into financial responsibility agreements with his medical providers. As the Hanif plaintiff neither paid, nor incurred personal liability for, the amount of the medical charges his health care providers billed to Medi-Cal, the Hanif court had no occasion to address the issue presented here of whether a plaintiff in a personal injury action who has private health care insurance may recover, under the collateral source rule, economic damages for the amount of reasonable charges her health care providers have billed, but which neither she nor her health care insurer is obligated to pay because the providers, under contracts into which they have entered with that insurer, have agreed to accept as payment in full payments from the plaintiff and her health care insurer in an amount that is less than the amount the providers have billed.[7]
Hamilton's reliance on Nishihama is also unavailing. In that case, the plaintiff (Nishihama) was injured when she tripped and fell in a pothole in a crosswalk maintained by the defendant city. (Nishihama, supra, 93 *702 Cal.App.4th at p. 301.) The jury's award of damages for Nishihama's past medical care expenses included the sum of $17,168 for care she received from California Pacific Medical Center (CPMC). (Id. at p. 306.) That amount was based on CPMC's normal rates. (Ibid.) Under an agreement between CPMC and Nishihama's health care insurer (Blue Cross), CPMC agreed that Blue Cross would pay reduced rates for specified services that CPMC rendered to Blue Cross's members, and CPMC would accept those reduced payments as payment in full for its services. (Ibid.) Under the terms of that agreement, CPMC accepted from Blue Cross the sum of $3,600 as payment in full for the services CPMC rendered to Nishihama. (Id. at pp. 306-307.)
The defendant city appealed, complaining that the jury's award for CPMC's services was based on CPMC's normal rates, rather than on the sum CPMC accepted under its agreement with Blue Cross. (Nishihama, supra, 93 Cal.App.4th at p. 307.) Nishihama responded by claiming that because CPMC had filed a lien against her recovery under the HLA, she should not be placed in the position of having to accept the lesser amount that Blue Cross paid while risking the possibility that she would have to pay the greater billed amount to CPMC because of its lien. (Nishihama, supra, at p. 307.)
Addressing Nishihama's concerns first, the Court of Appeal concluded that CPMC's lien rights under the HLA did not extend beyond the amount it agreed to receive from Blue Cross as payment in full for the services CPMC provided to Nishihama. (Nishihama, supra, 93 Cal.App.4th at p. 307.) Noting that the HLA provides for third party liability to a lienholding health care provider "for the amount of its lien claimed in the notice which the hospital was entitled to receive as payment for the medical care and services rendered to the injured person" (§ 3045.4, italics added), the Court of Appeal stated that "[t]he amount that a hospital is entitled to receive as payment necessarily turns on any agreement it has with the injured person or the injured person's insurer." (93 Cal.App.4th at p. 308.) The Nishihama court concluded that CPMC had no lien rights against Nishihama because it had received $3,600, which was the amount it was "entitled to receive" as payment for the medical care and services it rendered to Nishihama, as that was the payment amount it had agreed to receive from Blue Cross as payment in full for the medical services it provided to Nishihama. (Id. at pp. 307-308.)
The Nishihama court then addressed the defendant city's contention that the trial court erred by permitting the jury to award Nishihama damages for medical expenses based on CPMC's normal rates, rather than on the negotiated sum CPMC actually accepted from Blue Cross ($3,600). Citing Mercy Hospital & Medical Center v. Farmers Ins. Group of Companies (1997) 15 Cal.4th 213 [61 Cal.Rptr.2d 638, 932 P.2d 210] for the proposition that a hospital's lien rights under the HLA derive from the rights of the injured *703 person, Nishihama held that because CPMC had no lien rights under the HLA against Nishihama's recovery as it had been paid $3,600 as payment in full for the medical services it provided to her, the trial court "erred in permitting the jury to award [her] an amount in excess of $3,600 for the services provided by CPMC." (Nishihama, supra, 93 Cal.App.4th at p. 307.)
We disagree with this holding in Nishihama and the reasoning upon which it is based. In our view, the issue of whether Nishihama was entitled to recover damages for past medical expenses based on her medical provider's (CPMC's) normal (i.e., usual and customary) rates or based on the negotiated rates CPMC agreed to accept from her private health care insurer (Blue Cross) as payment in full for the medical services CPMC rendered to her should have been resolved based on an analysis of Nishihama's rights under the collateral source rule, rather than on an analysis of CPMC's lien rights under the HLA. Nishihama was an injured plaintiff whose medical care expenses were covered under private health care insurance she had procured, and her common law compensatory rights under the collateral source rule were independent of, and unrelated to, CPMC's statutory lien rights under the HLA. Thus, the fact that CPMC had no lien rights against Nishihama's recovery against the defendant city because CPMC had received from Blue Cross the reduced negotiated payment of $3,600 it was entitled to receive under its agreement with Blue Cross, was not pertinent to the issue of whether Nishihama was entitled under the collateral source rule to recover economic damages in the amount of $17,168 based on CPMC's usual and customary rates. Resolution of that issue required an analysis under the collateral source rule of whether Nishihama, before she received medical care from CPMC, entered into a financial responsibility agreement with that medical provider, and thus whether she incurred pecuniary detriment or loss in the form of personal liability for the medical expenses she would later incur at CPMC's normal rates. Because the holding in Nishihama is not based on such an analysis under California's collateral source rule, Hamilton's reliance on that case is misplaced.
We agree with the observations of Associate Justice Eileen C. Moore in her concurring opinion in Olsen v. Reid (2008) 164 Cal.App.4th 200, 204 [79 Cal.Rptr.3d 255] (Olsen) that, "[w]ithout statutory authority or the Supreme Court's blessing, the Hanif/Nishihama line of cases divorced the collateral source rule from the complicated area of medical insurance," and, "[a]bsent such approval, Hanif/Nishihama simply goes too far."
We also agree with Justice Moore's view that changes to the collateral source rule should be made by the Legislature. (Olsen, supra, 164 Cal.App.4th *704 at pp. 213-214 (conc. opn. of Moore, J.).) The collateral source rule has twice been abrogated or modified by statute. "The Medical Injury Compensation Reform Act abrogates the rule in actions for professional negligence against health care providers." (6 Witkin, Summary of Cal. Law, supra, Torts, § 1631, p. 1145, citing Civ. Code, § 3333.1 subd. (a).) Government Code section 985 modifies the collateral source rule by "establish[ing] a special procedure by post-trial motion for the reduction of a judgment against a state or local public entity in an action for personal injuries or wrongful death." (6 Witkin, Summary of Cal. Law, supra, Torts, § 1637, p. 1152.) Under that section, a public entity defendant may, by noticed motion, seek a posttrial reduction of a judgment entered against it that includes damages "for which payment from a collateral source" above a specified amount "has already been paid or is obligated to be paid for services or benefits that were provided prior to the commencement of trial." (Gov. Code, § 985, subd. (b); see also 6 Witkin, Summary of Cal. Law, supra, Torts, § 1638, p. 1153.)
We conclude that any further abrogation of the collateral source rule, particularly in the complex context of medical insurance presented here, is best left to legislative enactment rather than piecemeal common law development. (See Helfend, supra, 2 Cal.3d at p. 13 [the collateral source rule, "at least with respect to medical insurance benefits has become so integrated with our present [tort] system that its precipitous judicial nullification would work hardship"; and any proposed changes, "if desirable, would be more effectively accomplished through legislative reform"]; see also Smock v. State of California (2006) 138 Cal.App.4th 883, 888 [41 Cal.Rptr.3d 857] ["If other modifications or limitations to this long-established rule are warranted, their creation is best left to the Legislature."].)
In sum, the court's order reducing the jury's special verdict for Howell's past medical expenses by $130,286.90 (from $189,978.63 to $59,691.73) must be reversed because it violates the collateral source rule.

II

POSTVERDICT MOTION PROCEDURE
Howell next contends that Hamilton's postverdict motion was procedurally improper. Specifically, she contends the postverdict motion procedure the court used in this case was not authorized because "[t]he only authority for a *705 `post-verdict reduction hearing' concerning the role of collateral source payments in recovery of damage awards" is Government Code section 985, subdivision (b),[8] and "that procedure is exclusively reserved to public entity defendants." Howell also contends that because she did not "waive her right to have all questions of fact determined by the jury" and "the issue of what was paid to satisfy the charges incurred by [Howell] to her past healthcare providers is a question of fact," the court "erred in invading the province of the jury and acting as trier of fact on the issue of what was `paid.'"

A. Authority to Hear and Decide Hamilton's Postverdict Motion

In response to Howell's contention that the postverdict motion procedure the court used in this case was not authorized, Hamilton relies on Greer v. Buzgheia (2006) 141 Cal.App.4th 1150 [46 Cal.Rptr.3d 780] (Greer) and Justice Richard D. Fybel's concurring opinion in Olsen, supra, 164 Cal.App.4th at pages 214-218, for the proposition that this posttrial procedure for reducing the past medical expenses portion of a jury verdict under what Hamilton calls the "Hanif/Nishihama rule" is specifically authorized in California. Hamilton's reliance on Greer and Justice Fybel's concurring opinion in Olsen is unavailing.
In Greer, the trial court denied the defendant's motion in limine to exclude evidence of the amount of medical expenses billed to the plaintiff that exceeded the amount paid on the plaintiff's behalf to his medical providers. (Greer, supra, 141 Cal.App.4th at p. 1154.) The Court of Appeal noted that in denying the defendant's motion in limine, "the trial court informed defense counsel that, while a postverdict reduction of the jury's award of medical expenses might be justified, defendant could not prevent the jury from hearing evidence regarding reasonable medical costs for plaintiff's care in the first instance." (Id. at p. 1157.) Noting also that the trial court "made it clear that if the jury rendered an award that was excessive under Hanif/Nishihama, *706 it would consider a posttrial motion to reduce the recovery," the Greer court concluded that "the trial court did not abuse its discretion in allowing evidence of the reasonable cost of plaintiff's care while reserving the propriety of a Hanif/Nishihama reduction until after the verdict." (Ibid., some italics added.) Despite Howell's claim to the contrary, Greer thus supports the proposition that a trial court is authorized to use the postverdict motion procedure to reduce under Hanif and Nishihama a jury's award for past medical expenses.
(5) In his Olsen concurring opinion, however, Justice Fybel gave only conditional support for this proposition, indicating that such a posttrial motion procedure would "not be necessary or appropriate" if the proper application of the collateral source rule does not include the reduction of a verdict to the amount actually paid or incurred by the plaintiff or a collateral source such as a health plan: "If the proper application of the collateral source rule includes reducing a verdict to the amount actually paid or incurred by the plaintiff or by a collateral source such as a health plan, a hearing is necessary and appropriate to determine the correct amount. If a reduction is not proper under the collateral source rule, a hearing would not be necessary or appropriate. Therefore, whether such a hearing should be held is dependent on whether a reduction to the total amount actually paid by any source or incurred by the plaintiff is proper under the collateral source rule. The propriety of such a hearing is not a separate issue. If such a hearing is to be held, the trial court has the statutory authority under Evidence Code sections 320 (order of proof) and 402 (procedure for determining evidentiary matters) to hold the hearing." (Olsen, supra, 164 Cal.App.4th at pp. 217-218 (conc. opn. of Fybel, J.), italics added.)
We disagree with Greer to the extent it holds that a trial court in a personal injury action is authorized to hear and grant a defendant's posttrial motion to reduce under Hanif and Nishihama a privately insured plaintiff's recovery of economic damages for past medical expenses. As discussed, ante, we have concluded that the negotiated rate differential is a collateral source benefit within the meaning of the collateral source rule, and thus the trial court erred in granting Hamilton's motion for an order reducing the jury's award for Howell's past medical expenses in the amount of that differential ($130,286.90).
(6) Paraphrasing Justice Fybel's concurring opinion in Olsen, we conclude that, because the proper application of the collateral source rule does *707 not include reducing a verdict to the amount actually paid or incurred by the plaintiff or a collateral source such as a health plan, a defendant's posttrial motion to reduce a privately insured plaintiff's recovery of economic damages for past medical expenses by the amount of the negotiated rate differential is not necessary or appropriate and is thus unauthorized. (Olsen, supra, 164 Cal.App.4th at pp. 217-218 (conc. opn. of Fybel, J.).)

B. Claim of Improper Posttrial Factfinding

In light of our conclusions that the court erred in reducing the jury's award for Howell's past medical expenses by the amount of the negotiated rate differential and that the posttrial motion procedure the court used was unauthorized, we need not reach Howell's claim that the court violated her right to a jury trial.

III

SUFFICIENCY OF THE EVIDENCE
Last, Howell contends that Hamilton's motion to reduce the jury's verdict "lacked sufficient evidence to support the claimed reduction." Specifically, Howell's principal contention is that "there is no evidence in the trial record to support a finding of fact as to what was `paid' by [her] private health insurer to satisfy her past medical debts to Scripps and/or CORE and thus an insufficient record to support the court's reduction of the verdict for past medical specials." This contention appears to be based on a claim that Hamilton, as the moving party, failed to present evidence of what PacifiCare "paid" to her medical providers in the form of "in-kind benefits," as shown by Howell's assertion that "she incurred and is entitled to recover the full value of the past medical expenses incurred as awarded by the jury, without regard to how those incurred charges were discharged on her behalf by PacifiCare."
As discussed, ante, we conclude that Howell is entitled under the collateral source rule to recover the full reasonable amount of past medical expenses she incurred in this matter ($189,978.63), as awarded by the jury. Accordingly, we conclude her claim that the evidence is insufficient to support the court's posttrial reduction in the jury's award of such damages is moot.

*708 DISPOSITION
The order is reversed, and the matter is remanded with directions to reinstate the jury's award of economic damages for Howell's past medical expenses in the amount of $189,978.63 and to enter judgment accordingly. Howell shall recover her costs on appeal.
Benke, Acting P. J., and McIntyre, J., concurred.
NOTES
[1] Amicus curiae Consumer Attorneys of California (CAC) refers to this difference as an "alternative payment rate discount." Amici curiae Association of California Insurance Companies and Personal Insurance Federation of California refer to this difference as "phantom `expenses' that no one paid or ever will pay" and "the price discount." Amicus curiae Association of Southern California Defense Counsel refers to the difference as "the difference between the amount paid and the never-paid `usual and customary' rate."
[2] $94,894.42 + $35,392.48 = $130,286.90.
[3] For discussions of the collateral source rule in medical insurance cases, see Daniel P. Barer's The Collateral Conundrum: Olsen v. Reid Frames the Hanif/Nishihama Controversyand Suggests How It Will Turn Out, and Scott H.Z. Sumner's Medical Special Damages "Incurred" Under California Law: The Collateral Source Rule, Law of Contracts, and the Discount Myth, both of which were recently published in the California State Bar Litigation Section's journal, California Litigation (No. 3 2008) volume 21, at pages 5-11 and 12-18, respectively.
[4] Hamilton acknowledges that the collateral source rule applies to PacifiCare's cash payments to Scripps and CORE on Howell's behalf, and that the jury properly awarded her economic damages in the amount of $59,691.73 for this portion of Howell's medical bills.
[5] All further statutory references are to the Civil Code unless otherwise specified.
[6] CAC asserts that, "[s]ince hospitals can contract for the right `to recover the difference between usual and customary charges and the negotiated rate through a lien under the [Hospital Lien Act, §§ 3045.1-3045.6)]' (Parnell, supra, 35 Cal.4th at [p.] 611), there is no question but that the full usual and customary charge is the debtthe financial detrimentthe patient incurs, and that a health plan's alternate payment rate discount is itself a collateral benefit indemnifying insureds against the debt they have incurred." (Italics added.)
[7] In Parnell, supra, 35 Cal.4th 595, a 2005 decision that involved a hospital's lien rights under California's Hospital Lien Act (HLA) (§§ 3045.1-3045.6), the California Supreme Court stated in a footnote that "we do not reach, and express no opinion on," the issue of whether Hanif, supra, 200 Cal.App.3d 635, "appl[ies] outside the Medicaid context and limit[s] a patient's tort recovery for medical expenses to the amount actually paid by the patient notwithstanding the collateral source rule." (Parnell, at p. 611, fn. 16.)
[8] Government Code section 985, subdivision (b) (discussed, ante) provides in part: "Any collateral source payment paid or owed to or on behalf of a plaintiff shall be inadmissible in any action for personal injuries or wrongful death where a public entity is a defendant. However, after a verdict has been returned against a public entity that includes damages for which payment from a collateral source . . . has already been paid or is obligated to be paid for services or benefits that were provided prior to the commencement of trial. . . the defendant public entity may, by a motion . . . request a posttrial hearing for a reduction of the judgment against the defendant public entity for collateral source payments paid or obligated to be paid for services or benefits that were provided prior to the commencement of trial." (Italics added.)